# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-14-00199-CV

---

**Stephen Gregory Sloat, Ed Bryan, Church of Scientology International, David J. Lubow, and Monty Drake, Appellants**

**v.**

**Monique Rathbun, Appellee**

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. C-2013-1082B, HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## O P I N I O N

Monique Rathbun sued Stephen Gregory Sloat, Ed Bryan, Church of Scientology International, David J. Lubow, and Monty Drake (collectively, "the Scientology Defendants") alleging causes of action for intentional infliction of emotional distress, invasion of privacy by public disclosure of private facts and by intrusion on seclusion, and tortious interference with contract. In this accelerated appeal, the Scientology Defendants challenge the trial court's denial of their motions to dismiss the claims against them pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code, a statute entitled "Actions Involving the Exercise of Certain Constitutional Rights" and termed the "Texas Citizens Participation Act." *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961-64 (codified at Tex. Civ. Prac. & Rem. Code §§ 27.001-.011) (TCPA); Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (authorizing interlocutory appeal of order denying motion to dismiss filed under TCPA section 27.003).

The Scientology Defendants' various appellate issues reduce to the argument that the trial court reversibly erred by denying their motions to dismiss because (1) they properly invoked the TCPA by establishing, by a "preponderance of the evidence," that Rathbun's claims against them are "based on, relate to, or are in response to" their "exercise of their rights" of "free speech," "association," and "to petition," and that neither the statute's "commercial transaction" nor "bodily injury" exemption applies, and (2) Rathbun failed to establish by "clear and specific evidence" a "prima facie" case for each essential element of her four causes of action as required to avoid dismissal of a claim covered by the TCPA. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003(a) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."), .010(b) (commercial transaction exemption), .010(c) (bodily injury exemption), .005(c) ("The trial court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."). The Scientology Defendants also challenge the trial court's award of attorneys' fees to Rathbun. *See id.* § 27.009(b) ("If the court finds that a motion to dismiss under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party."). We will affirm in part and reverse in part.

2

# BACKGROUND[1]

Monique Rathbun is married to Marty Rathbun, a former member of and official in the Church of Scientology. Until December 2012, the Rathbuns resided at their home in Ingleside on the Bay, Texas. In her petition, Rathbun alleged that, due to relentless harassment and surveillance of her home and activities by the Scientology Defendants beginning in February 2009, she and her husband moved to a wooded lot near Bulverde, Texas, where they hoped to avoid further contact between them and the Scientology Defendants. According to Rathbun, after a brief respite the surveillance and "tailing" activities continued and, in July 2013, Rathbun discovered a high-tech surveillance camera mounted on a tree near their new property and aimed at their house. Rathbun claimed that Sloat contacted her using a false identity and "provided preposterous, false stories to explain the surveillance cameras and why he was moving an RV onto this undeveloped property."

Having failed at the efforts to avoid further contact with the Scientology Defendants and seeking to put an end to what she described as constant harassment, Rathbun filed the underlying suit, alleging causes of action against the Scientology Defendants for intentional infliction of emotional distress, invasion of privacy by public disclosure of private facts and by intrusion on seclusion, and tortious interference with contract. Rathbun also sought a temporary restraining order and a temporary injunction preventing the Scientology Defendants from interfering with her employment, invading her privacy, and inflicting emotional distress on her. The trial court signed a temporary restraining order enjoining the Scientology Defendants from conducting electronic

---

[1] The parties are familiar with the facts of the case, its procedural history, the pleadings, and the evidence presented in support of and in opposition to the motions to dismiss. Accordingly, we will not recite them in detail in this opinion except as necessary to advise the parties of this Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.4.

surveillance of Rathbun's home, workplace, or public activities; making telephonic or electronic threats to her; following, pursuing, stalking, or "tailing" her; or contacting her employer, co-workers, family members or friends.

Thereafter, the Scientology Defendants filed motions to dismiss Rathbun's suit pursuant to the TCPA, contending that her claims were "based on, related to, or were in response to" conduct constituting the exercise of their "right of free speech," "right of association," and "right to petition." *See id.* §§ 27.001 (containing TCPA's definitions of exercise of rights of free speech, association, and to petition). The trial court permitted the parties to conduct discovery related to the motions to dismiss and, after conducting an extensive hearing, denied the motion and awarded Rathbun attorneys' fees. The Scientology Defendants then perfected this interlocutory appeal.

## DISCUSSION

As the movants, the Scientology Defendants bore the initial burden of demonstrating, by a "preponderance of the evidence," that Rathbun had asserted a "legal action" that was "based on, related to, or in response to" their exercise of their right of "free speech," right of "association," or right "to petition" as the TCPA defines those rights. *See id.* § 27.005(b). In applying these standards, Texas courts—including this one—have generally focused solely on the extent to which the factual bases of a challenged "legal action" constitute expression within the TCPA's definitions of the "exercise of" the "right of free speech," "right of association," or "right to petition." *See, e.g.*, *Combined Law Enforcement Ass'ns of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *5 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.) (considering whether communications plaintiffs alleged to be defamatory fall within TCPA's definition of exercise of right of association);

4

*see also Serafine v. Blunt*, 466 S.W.3d 352, 373 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) ("[T]he focus [of the Texas cases to date] has been solely on the factual allegations underlying the challenged 'legal action' and whether they correspond to one of the Act's definitions of protected conduct, with no consideration of a party's subjective aims in asserting the 'legal action.'" (citing illustrative cases)). Neither party has presented any reason to depart from this prevailing view, so we will continue to apply it here.

It is beyond dispute that Rathbun's lawsuit would represent one or more "legal actions" under the TCPA barring an applicable exemption, an issue we will leave aside for now. *See* Tex. Civ. Prac. & Rem. Code § 27.001(6) ("legal action" defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief"); *cf. id.* § 27.010 (certain "legal actions" exempted from TCPA). The issue, then, distills to the extent to which her claims are predicated on expression within the TCPA's definitions of the "exercise of" the "right of free speech," "right of association," or "right to petition." The ultimate question of whether a particular factual basis for a "legal action" qualifies as expression within the TCPA's definitions is a question of law that we review de novo. *See Serafine*, 466 S.W.3d at 357; *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). As for a trial court's determination of what the factual bases for a "legal action" are, the standards governing our review are less clear. *See Serafine*, 466 S.W.3d at 369 & n.28 (Pemberton, J., concurring).[2] We can

---

[2] In his concurring opinion in *Serafine*, Justice Pemberton observed that the TCPA's use of a "preponderance of the evidence" standard would ordinarily suggest that a fact finder (here the trial court) ascertains facts based on its assessment of the weight and credibility of competing

5

conclude, however, that we look to the pleadings, affidavits, or other evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) ("the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based"); *see also id.* § 27.006(b) (contemplating that additional evidence adduced in discovery can also be considered); *Serafine*, 466 S.W.3d at 360 (recognizing that pleadings may be considered as evidence, contrary to general rule). Importantly here, we also view them in the light most favorable to Rathbun, who is both the nonmovant and the prevailing party below. *See Serafine*, 466 S.W.3d at 369 n.28 (Pemberton, J., concurring) ("Under either standard of review, the Court would view the pleadings and evidence in the light most favorable to the Blunts, who are both the non-movants and the prevailing parties below."); *see also Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (reviewing pleadings and evidence in light most favorable to non-movant); *Newspaper Holdings*, 416 S.W.3d at 80-81 (applying same standard and citing *Miranda* in support).[3]

---

evidence, including live testimony, with appellate review that correspondingly views the evidence in the light most favorable to the explicit or implicit fact findings supporting the trial court's order. *See Serafine v. Blunt*, 466 S.W.3d 352, 369 n.28 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring). The TCPA's procedural framework, however, "seems to contemplate an analysis more closely akin to that governing evidence-based pleas to the jurisdiction under *Texas Department of Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)," under which "the factual allegations in the claimant's petition are liberally construed in favor of jurisdiction, presumed true unless negated by evidence, and any evidence is viewed in the light most favorable to the claimant, similar to summary-judgment practice." *See id.*

[3] In the event the correct standard is a traditional review of the legal and factual sufficiency of the evidence, such that fact findings by the trial court could become relevant, we do not understand the trial court's order in this case to make any explicit fact findings that would be contrary to the facts that we would imply in favor of the order. While the court does at times appear to assume the Scientology Defendants' characterizations of Rathbun's claims, it does so for purposes of analyzing other issues, such as the applicability of the exemptions contained in TCPA section 27.010.

6

In sum, our inquiry is: (1) what the factual bases for Rathbun's claims are, based on the pleadings and evidence viewed in the light most favorable to her; and (2) the extent to which these factual bases, as a matter of law, are protected expression within the TCPA's definitions. Implicit in this analysis is that we do not blindly accept attempts by the Scientology Defendants to characterize Rathbun's claims as implicating protected expression. To the contrary, we view the pleadings in the light most favorable to Rathbun; i.e., favoring the conclusion that her claims are not predicated on protected expression. Likewise, any activities by the Scientology Defendants that are not a factual predicate for her claims are simply not pertinent to the inquiry. *See* Tex. Civ. Prac. & Rem. Code § 27.003 (party may file motion to dismiss if legal action is "based on, relates to, or is in response to" protected conduct).

Viewed in the light most favorable to Rathbun, she bases her claims on the following alleged facts. Rathbun married Marty Rathbun in 2005. In 2004, Marty Rathbun had left his position as the second highest ranking official in the Church of Scientology's organization and was living in anonymity in South Texas. Marty Rathbun averred that in 2009 he was approached by the media requesting to interview him about Scientology and he granted those requests in an attempt to temper what he perceived as escalating mistreatment of members of the Church of Scientology's clergy at the direction of David Miscavige, the highest ranking Scientology official. According to Marty Rathbun, media interest in him waned by the end of 2010, but was revived by the Scientology Defendants' activities at Ingleside on the Bay, including their surveillance and tailing of the Rathbuns. Rathbun was never a member of the Church of Scientology, did not join her husband in speaking out about Scientology issues, and did not take a public position regarding Scientology. Rathbun's only

connection to Scientology was her marriage to a prominent former Scientologist. Nevertheless, Rathbun alleged, the Scientology Defendants have engaged in a three-year campaign of "ruthlessly aggressive misconduct" against her, which continued, unabated, until she filed suit in 2013. According to her petition, the campaign against her was part of a coordinated effort by the Scientology Defendants, conducted pursuant to Scientology's written policies and procedures, to "threaten that which an enemy seeks to protect," i.e., Marty Rathbun's family.[4]

---

[4] The record includes the affidavit of a professional videographer initially hired by the Scientology Defendants to provide videography services in which he avers that defendant David Lubow told him the purpose of going to Ingleside on the Bay was "to make the Rathbuns life a living hell" and "to turn their neighbors against them" so they would be forced to move. Also included in the record is the affidavit of another former Scientologist who occupied a high-level position in Scientology in which he averred that the following is an excerpt from Scientology's "operations manual" that outlines how the organization deals with people it perceives as "attackers" of Scientology:

> 1. These persons can always lose their jobs. These jobs, permitting them power to destroy, are valuable to them. This is a POINT OF VULNERABILITY.

> 2. If the person's job is also not valuable to him or if he cannot be made to lose his job, something can be found which he is seeking to protect and it can be threatened.

>> A. COUNTERATTACK TO OBTAIN THE REMOVAL OF THE PERSON with a product of DISMISSED ATTACKER.

>> B. If on test, A is not feasible, SURVEY TO FIND OUT WHAT THE PERSON CONSIDERS VALUABLE AND USE IT FOR RESTRAINT.

According to the former Scientologist's affidavit, this excerpt reveals Scientology's "principle of finding out what the person [critical of Scientology] is seeking to protect and threatening that in order to 'restrain' the 'attacker.'"

Rathbun's petition further alleges:

> [The Scientology Defendants] have worked around the clock for three years to destroy Mrs. Rathbun. She has been harassed, insulted, surveilled, photographed, videotaped, defamed, and humiliated to such a degree as to shock the conscience of any decent, law-abiding person. She has been subject to numerous, aggressive attempts to intimidate her. Each and all of the [Scientology Defendants] have participated enthusiastically in this abuse, without regard to Mrs. Rathbun's basic rights as a human being. She has been targeted at home, at work, and anywhere else that she happens to be.

In support of her petition, Rathbun attached her own affidavit detailing the specifics of the conduct she alleges was abusive and harassing and, according to her petition, constitutes intentional infliction of emotional distress, tortious interference with contract, and invasion of privacy by intrusion on seclusion and public disclosure of private facts. These include:

- Scientologists appeared at her home after dark to interrogate her aggressively, refusing to provide their names and fleeing when Rathbun called the police.

- Scientology "operatives" openly followed her as she drove to and from work and when she and her husband took evening walks with their dog, these "operatives" would approach them in a golf cart with up to six cameras filming them and shout insults and rude questions relating to Scientology.

- Rathbun and her husband were publicly harassed by Scientology "agents" wherever they went, including at restaurants and at the beach.

- Scientology "investigators" have visited Rathbun's mother, father, former husband, friend, and co-workers and informed them that Rathbun's life was at risk as long as she remained married to Marty Rathbun.

- The Scientology Defendants sent a sex toy to Rathbun at her workplace and, when she was away from the office, sent flowers to one of her female co-workers with a "romantic" message purporting to be from Rathbun.

9

•  Scientology websites published allegations against Rathbun, including that she was a "sexual pervert" and is in reality a "man who has had a secret sex-change operation."

•  A Scientology private investigator had, from 2009 through 2012, leased a residence across the street from their Ingleside on the Bay home and installed high-powered still and video cameras pointed at and into Rathbun's home.

•  After the Rathbuns moved from their Ingleside on the Bay home to seek seclusion in a wooded lot in Comal County, they discovered that one of the Scientology Defendants had leased undeveloped property next to their home and installed a surveillance camera directed at their property.

Rathbun averred that these activities have caused her great distress and disrupted her privacy and peace of mind and, in her view, are calculated to damage her relationship with her husband and his relationship with her family and friends so as to cause her further harm. Rathbun sought damages for mental anguish, loss of earning capacity, damage to reputation, and the financial loss she alleges resulted from the Scientology Defendants' conduct set forth in her petition.

The Scientology Defendants moved to dismiss Rathbun's claims pursuant to the TCPA, arguing that the pleadings and the evidence they filed in support of their motion to dismiss show, by a "preponderance of the evidence," that the lawsuit was "based on, relates to, or is in response to" their exercise of their rights of "free speech" and "association" and the right "to petition." *See id.* §§ 27.005(b), .006. However, rather than address the specific allegations contained in Rathbun's petition and on which she claims to base her causes of action, the Scientology Defendants first endeavor to recast her petition as complaining principally of the activities of a group

of Scientologists self-described as "Squirrel Busters,"[5] including their acts of "standing in protest near Rathbun's property, holding signs of protest, attempting to speak to passers-by or those entering or leaving the property about the impropriety of Marty Rathbun's activities, and filming Marty Rathbun and others in public places as part of the production of a documentary or video about issues of potential or public importance, including importance to Scientologists." According to the Scientology Defendants, the "Squirrel Busters" went to Ingleside on the Bay to "document the Rathbuns' abuses and to produce documentary video of such abuses, including their provision of 'squirrel' Scientology from their place of business/residence."  The Scientology Defendants presented extensive argument and evidence to support their contention that the "Squirrel Buster" activities fell within the TCPA's definition of the exercise of the right of free speech, right to petition, or right of association.

To support their contention that Rathbun's petition is in response to protected "Squirrel Buster" activity, the Scientology Defendants point to paragraph 28 of Rathbun's petition, which states:

> The Squirrel Busters operation against the Rathbuns is an important basis of this lawsuit.  Ed Bryan was sent to OSA from California to join the Squirrel Busters in Texas.  On July 13, 2011, Mr. Bryan wrote the following concerning the Church's Texas operation against the Rathbuns:
>
>> "This is in co-ordination with OSA Int. [Office of Special Affairs—Church of Scientology International].  They are calling the shots and quite frankly I don't think it is very effective.  The reporters

---

[5] According to the Scientology Defendants, individuals engaged in the independent practice of Scientology outside the auspices of the Church of Scientology, as they maintain Marty Rathbun did, are dubbed "squirrels."

came to our house the other day and we didn't tell them very much. Our main guy went back to discuss with them a different strategy. The rat [Marty Rathbun] is getting more brazen and yesterday I actually had a 1 minute comm cycle [conversation] with him while he was on a walk. This guy is nuttier than a fruitcake. He's gone off the deep end. Taking him down will be no easy task. I just hope he self destructs before he does more damage to our church. He has gotten to some OTVIII's and I just can't think with how stupid they are to actually believe what he is saying." *Bracketed information added.*

According to the Scientology Defendants, the inclusion of this paragraph in Rathbun's petition reveals that her suit is based on, related to, or in response to their peaceful demonstrations in protest of Marty Rathbun's attack on the Church of Scientology, i.e., the activities of the "Squirrel Busters."

We disagree that the allegations in the petition can fairly be read, in the light most favorable to Rathbun, to support the Scientology Defendants' characterization of the factual basis for her claims. Significantly, paragraph 28 appears in a section of Rathbun's petition titled "Additional Jurisdictional Facts." Rathbun's petition states that the additional factual allegations made in that section, including those contained in paragraph 28, were made in response to complaints by defendants David Miscavige and the Religious Technology Center that she had failed to plead specific facts to support personal jurisdiction over them in Texas.[6] The "Additional Jurisdictional Facts" section of the petition includes twenty-one paragraphs that attempt to demonstrate that, while Miscavige remains physically outside the State of Texas, he directed a "planned, calculated, multiyear operation" against the Rathbuns in Texas, which included but was not limited to the

---

[6] Miscavige and Research Technology Center did not file motions to dismiss under the TCPA and are not parties to this appeal.

"Squirrel Busters" campaign,[7] such that he is subject to the jurisdiction of a Texas court. Rathbun's inclusion in her petition of jurisdictional allegations regarding Miscavige's allegedly tortious conduct committed in Texas, including orchestrating the "Squirrel Busters" campaign, does not transform her lawsuit into one arising out of, relating to, or responding to any protected activity the "Squirrel Busters" may have engaged in. Rather, viewing the record in the light most favorable to Rathbun, she complains of specific activities independent of the "Squirrel Busters'" protest or their activities of filming and producing a documentary in support of their religion. Her claims are based on allegations of conduct that plainly does not constitute acts of standing in protest, holding signs of protest, attempting to speak to passers-by, or making a documentary to defend the Church of Scientology, as the Scientology Defendants asserted in their motions to dismiss.

Other than argue that the "protest and film production" endeavors of the "Squirrel Busters" are protected rights of free speech and thus within the scope of the TCPA, the Scientology Defendants do not directly address the specific conduct Rathbun complains of, which includes following her while she went to and from work, shopping, out to dinner with friends, and walking her dog. Nor do they explain how alleged visits to Rathbun's family members, friends, and co-workers during which they allegedly gave warnings about Rathbun's personal safety while married to Marty Rathbun, constitute conduct covered by the TCPA. Moreover, other than deny having done so, the Scientology Defendants do not address Rathbun's allegations that they sent a sex toy to her at work and sent flowers with a "romantic" message purportedly from her to a female co-worker.

[7] According to the Scientology Defendants themselves, the "Squirrel Busters" protest occurred in April 18-21, 2011 and June through September 2011. Rathbun's petition complains of conduct occurring from 2009 through 2012.

13

For a communication to qualify for protection under the TCPA as the exercise of the right of free speech, the communication must be "made in connection with a matter of public concern." *See id.* § 27.001(3). Although the Scientology Defendants contend that their communications all related to a matter of public concern—namely, the "squirreling" of their religious doctrine—it strains credulity to consider the harassing conduct that Rathbun complains of as having any direct relationship to this issue, to the extent it could even be considered a matter of public concern in its own right. *See ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 846 (Tex. App.—Dallas 2015, pet. filed) (communications about private employment matter had merely tangential relationship to health, safety, environmental, and economic concerns and were not themselves communications about matter of public concern). Nor are we persuaded by the Scientology Defendants' argument that Rathbun is either a public figure or a limited-purpose public figure. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(D) ("matter of public concern" includes issues related to public figure). The record does not support the Scientology Defendants' contentions that Rathbun has made herself a public figure by actively participating in, rather than attempting earnestly to avoid, the allegedly "public controversy" between Marty Rathbun and the Church of Scientology. The mere fact that she is married to Marty Rathbun and shares a residence with him does not automatically place her in the category of people who have been found to be public figures by virtue of their relationship to famous people. *Compare Carson v. Allied News Co.*, 529 F.2d 206, 209 (7th Cir. 1976) (wife of Johnny Carson who herself commanded substantial amount of public interest considered public figure), *with Scaccia v. Dayton Newspapers, Inc.*, 867 N.E.2d 874, 881 (Ohio Ct. App. 2007) (fact that plaintiff was married to public official did not support conclusion that she voluntarily injected herself into

14

public controversy); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974) (setting forth standard for becoming limited-purpose public figure, which requires "looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation").[8] In sum, we conclude that the Scientology Defendants failed to meet their burden of demonstrating, by a preponderance of the evidence, that Rathbun's claims arise from their exercise of their rights of free speech or of association as those terms are defined in the TCPA.

The Scientology Defendants also argued in their motions to dismiss that Rathbun's allegations complaining of video surveillance by a private investigator reveal that her claims are in fact based on their retention and use of licensed private investigators, which they maintain is protected conduct under the TCPA's definition of the "right to petition." The Scientology Defendants argued that they were investigating Marty Rathbun's activities, including their claims that he solicited individuals to steal materials and information from the Church of Scientology International and other churches, misappropriated Scientology intellectual property, made defamatory statements about Scientology churches and officials, and attempted to instigate criminal investigations of Scientology churches and officials. According to the Scientology Defendants, they conducted their surveillance of Marty Rathbun as part of "pre-litigation or pre-petition investigation" that was necessarily incidental to, pertains to, and is in connection with a potential judicial proceeding and,

---

[8] The record, when read in the light most favorable to Rathbun, supports her claim that her husband's alleged notoriety resulted primarily from the Scientology Defendants' campaign to discredit him and is himself, if a public figure at all, one solely by virtue of becoming embroiled in a conflict with the Scientology Defendants. On this record, we cannot conclude that Marty Rathbun's notoriety, either within the Scientology community itself or among those interested in the Church of Scientology generally, constitutes the type of widespread fame that would transform Rathbun, by virtue of being Marty Rathbun's spouse, into an involuntary public figure.

consequently, is within the ambit of the TCPA's definition of the right to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.001(4).

Whether such pre-suit investigation does or does not fall within the statute's admittedly broad definition of the "right to petition" is a question we need not address because, again, Rathbun's suit is not based on the Scientology Defendants' attempts to discover facts related to Marty Rathbun's alleged cloak-and-dagger activities.[9] Rather, hers are garden-variety tort claims based on specific conduct that the Scientology Defendants have failed to demonstrate, by a preponderance of the evidence, implicates the exercise of their rights of "free speech," "association," or "to petition." The trial court did not err in concluding that the TCPA does not apply to Rathbun's suit against the Scientology Defendants.[10]

Having concluded that the Scientology Defendants failed to establish that the TCPA applies to Rathbun's claims, we need not address their arguments that the trial court erred in finding that the statute's "commercial speech" and "bodily injury" exemptions apply to Rathbun's claims. Nor do we reach the Scientology Defendants' issues regarding whether Rathbun established a prima facie case for each of the elements of her four causes of action.

---

[9] Indeed, counsel for the Church of Scientology International stated during a hearing held in connection with the motions to dismiss that: "Our investigation into Marty Rathbun for copyright violation is nowhere within the four corners of any claim that is being asserted in this case."

[10] An article regarding the virtues of the TCPA was recently published in the Texas Tech Law Review entitled "Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas." In light of the Scientology Defendants' attempted use of the TCPA as a shield to protect the type of conduct alleged in this case, we find the title of that article ironic.

16

*Award of Attorneys' Fees to Rathbun*

The trial court's order awarded Rathbun her court costs and attorneys' fees pursuant to section 27.009(b) of the TCPA. This section provides:

> If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party.

*Id.* § 27.009(b). The trial court's order includes the following in its conclusions of law:

> The instant record is voluminous, and counsel for all parties have been extremely thorough in their respective arguments and materials provided the Court. Accordingly, the Court has endeavored to be just as thorough not only in reading the evidence, the objections, and the briefs presented but also in conducting independent research on this relatively new aspect of Texas law. As a result, the Court declines to conclude the Defendants' motions, in and of themselves, are frivolous, but the Court does conclude that the method in which the motions were litigated, from the discovery to the objections, etc., resulted in hours upon hours of courtroom time that could have been better spent elsewhere.

The Scientology Defendants assert that the award of attorneys' fees was not authorized by the statute because the trial court expressly found that the motions were not frivolous and did not find that they were solely intended to delay. Rathbun counters that the trial court found that "the motions were litigated in such a way as to intentionally cause delay," and that such a finding was supported by the evidence.

We do not agree that the trial court's order can be construed in a manner that could support an award of attorneys' fees under section 27.009(b). While the trial court expressly stated its view that the manner in which the motions were litigated took time that could have been

17

more productive if used in other ways, this language cannot be read as a finding that the motions were filed with the sole intention of delaying the proceedings. In the absence of such a finding, an award of attorneys' fees is not authorized by the statute. *See, e.g.*, *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) ("We have consistently held that a prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties."). We reverse that portion of the trial court's order awarding Rathbun court costs and attorneys' fees.

## CONCLUSION

The Scientology Defendants failed to demonstrate, by a "preponderance of the evidence," that Rathbun's causes of action for intentional infliction of emotional distress, invasion of privacy by intrusion on seclusion and by public disclosure of private facts, and tortious interference with contract were "based on, related to, or in response to" the Scientology Defendants' "exercise of their right of free speech, right to petition, or right of association." They have therefore failed to establish that the TCPA applies to this case. Consequently, we affirm the trial court's order denying the Scientology Defendants' motions to dismiss. Because the trial court did not find that the motions were frivolous or solely intended to delay, the award of attorneys' fees pursuant to the TCPA was not authorized. We therefore reverse the portion of the trial court's order awarding Rathbun her court costs and attorneys' fees.

18

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed in Part, Reversed in Part

Filed:   November 6, 2015