**AFFIRMED and Opinion Filed July 12, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00874-CV**

**JAMES DAMONTE, Appellant**
**V.**
**HALLMARK FINANCIAL SERVICES, INC. AND HEATH XS, LLC, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-05976**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Reichek

James Damonte appeals the trial court's denial of his motion to dismiss under the Texas Citizens Participation Act ("TCPA"). In eight issues, Damonte generally contends the trial court erred in denying his motion because the lawsuit brought against him by Hallmark Financial Services, Inc. and Heath XS, LLC (collectively "Hallmark") is based on, related to, or in response to his exercise of his rights of free speech and association. Damonte further contends Hallmark failed to establish by clear and specific evidence a prima facie case for each of the elements of its claims. Because we conclude Damonte failed to show that the TCPA applies to the claims made against him by Hallmark in this case, we affirm the trial court's order.

## Background

Hallmark is a diversified specialty lines property/casualty insurance company licensed to do business in all fifty states. In 2008, Hallmark acquired Heath, an underwriting company. At the time of the acquisition, Damonte was executive vice president of Heath working in New Jersey along with a small team of fellow employees. Damonte moved to Dallas after the acquisition, but continued as Heath's executive vice president supervising the same team. He went on to serve additionally as president of the Casualty, Aviation, and Programs divisions of Hallmark.

During his employment with Heath, Damonte signed an employment agreement that included provisions for the protection of confidential and proprietary information. The agreement contained certain non-competition, non-solicitation, non-disclosure, and confidentiality restrictions that applied during Damonte's employment and up to two years after his employment terminated. For purposes of these restrictions, the company was defined to include Heath's parent company, its subsidiaries, and any other entity controlled by or under common control with Heath or its subsidiaries to the extent Damonte was "actively involved in the business thereof."

In 2015, Damonte executed a Confidentiality and Non-Solicitation Agreement with Hallmark. Similar to his employment agreement with Heath, this agreement provided for the protection of the company's confidential and proprietary information. With respect to the prohibitions on solicitation, Damonte agreed, among other things, that for a twenty-four month period following the termination of his employment, he would not "entice, solicit, or induce, or attempt to entice, solicit, or induce, any employee, consultant, or independent contractor of Hallmark . . . to terminate his/her/its relationship with Hallmark for any reason whatsoever, without the prior approval of the company."

On April 19, 2018, Damonte submitted his resignation to Hallmark effective May 9. According to Hallmark, after submitting his resignation, Damonte began to pressure Hallmark

–2–

management to amend his non-compete obligations. This, coupled with "a change in Damonte's behaviors prior to his resignation," prompted Hallmark to begin reviewing employee activity relating to the download, transmittal, and deletion of electronic data housed on the company's servers. Hallmark claims it discovered that two employees who worked closely with Damonte sent multiple emails to themselves at their private email addresses containing substantial amounts of Hallmark's confidential and proprietary information. Hallmark further asserts there was no business reason to explain this conduct.

Hallmark brought this suit alleging that, on information and belief, Damonte misappropriated and wrongfully disclosed Hallmark's confidential information. Hallmark further alleged that Damonte actively solicited other employees to collude in a scheme to damage and compete with Hallmark. Hallmark asserted claims for breach of fiduciary duty, breach of contract, and violations of the Texas Uniform Trade Secrets Act.

Nine days after Hallmark filed suit, Damonte filed a motion to dismiss under the TCPA. In his motion, Damonte argued that "the entire basis of the lawsuit is Hallmark's unverified allegation that Mr. Damonte engaged in a scheme with other employees of Hallmark to compete against Hallmark" and, therefore, "the entire lawsuit is 'based on, relates to, or is in response to' Mr. Damonte's association with Hallmark employees." Damonte further contended that the purpose of the suit was to chill his exercise of his rights to free speech and association because his discussions with other Hallmark employees prior to his resignation concerned their complaints about mistreatment, poor compensation, and the company's strategic direction. Finally, Damonte contended Hallmark could not provide clear and convincing evidence to support each of the elements of its claims against him.

In support of his motion, Damonte submitted a declaration in which he stated that, throughout 2017, Hallmark employees came to him with complaints about the company. He stated

he repeatedly spoke with Hallmark executives about the employees' concerns, but the concerns were ignored. Damonte asserted that he resigned from Hallmark because the company refused to respond to its serious morale issues and he believed the organization would ultimately lose key employees resulting in lower work quality and reputational damage. Damonte denied any knowledge of employees sending emails from their company accounts to their personal accounts and stated that any such acts were committed without his authorization or involvement.

On May 21, 2018, Hallmark filed a motion for expedited discovery under the TCPA requesting that it be allowed to conduct discovery relevant to Damonte's motion to dismiss. Damonte opposed the motion, stating the sole allegation against him was that he "associated with individuals whom Hallmark believed acted wrongly" and "Hallmark's petition provides all the information the court needs" to decide the motion to dismiss. The trial court did not rule on Hallmark's motion.

On June 12, Hallmark filed a declaration by David Miller, the company's senior vice president of human resources. In the declaration, Miller discussed the investigation that led to the discovery that two employees associated with Damonte had emailed confidential information to their personal email accounts. According to Miller, when Damonte resigned, he stated he did not have any future employment plans, which raised "red flags." Within three weeks after Damonte resigned, eight other employees, who either worked closely with Damonte or were related to him, also resigned. Seven of the eight employees stated, like Damonte, that they had no future employment plans.

Miller stated that Hallmark's investigation revealed that one employee who worked with Damonte, Elaine Kelly, sent herself approximately fifty emails containing confidential and proprietary information in the few weeks prior to Damonte's resignation and that attempts were made to permanently delete many of those emails off the company servers. A second employee,

Korey Bruner, sent herself approximately 150 emails shortly before Damonte resigned. Miller stated these emails contained "highly proprietary information and trade secrets" including underwriting guidelines, training documents, forms for underwriting, and customer contact information. Kelly and Bruner were among the eight employees that left Hallmark shortly after Damonte resigned and stated they did not have future employment plans.

Three weeks after Hallmark submitted Miller's declaration, Damonte filed a supplemental declaration along with eight additional declarations signed by the Hallmark employees who resigned shortly after he did. Generally, the declarations stated that Damonte never solicited the other employees to leave their employment with Hallmark and they all left because of problems with the company. Damonte further stated he did not collude with anyone to misappropriate confidential information and did not intend to work with any of the former employees or compete with Hallmark.

In its response to Damonte's motion to dismiss, Hallmark argued that Damonte was attempting to fit the lawsuit against him within the TCPA framework by suggesting that Hallmark's claims were related to his communications with fellow employees about their workplace complaints and concerns. Hallmark contended its claims had nothing to do with these communications, if they occurred, but rather were based solely on Damonte's actions of misappropriating the company's confidential information and soliciting employees as a part of a plan to compete with Hallmark in violation of his contractual and fiduciary obligations.

Following a hearing, the trial court signed an order stating it had reviewed the motion, response, declarations, and other documentary evidence along with the arguments of counsel and determined the motion should be denied. The court further ordered that it would hold a hearing at a later date to determine if the motion to dismiss was frivolous and filed solely for the purpose of delay. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12).

**Analysis**

**I. The TCPA**

In his first three issues, Damonte contends the trial court erred in denying his motion to dismiss because Hallmark's claims against him were based on, related to, and/or in response to his exercise of his right to free speech and association with his fellow employees. The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (*Coleman II*). We construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

To effectuate the statute's purpose, the Legislature has provided a procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of First Amendment rights protected by the statute. *Coleman II*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, related to, or in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC.

& REM. CODE ANN. § 27.005(c); *see Elliott*, 564 S.W.3d at 847. If the court finds that a motion to dismiss filed under the TCPA is frivolous or intended to delay, the court may award costs and reasonable attorney's fees to the responding party. *Id*. § 27.009(b).

## II. Standard of Review

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.— Dallas July 18, 2017, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. ANN. § 27.006(a). However, the plaintiffs' pleadings are generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

## III. Freedom of Speech

As the movant to dismiss under the TCPA, Damonte was required to show by a preponderance of the evidence that Hallmark's legal action "is based on, relates to, or is in response to" his exercise of the right of free speech, right of association, or his right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).[1] Each of these protected rights requires a "communication" as defined by the TCPA. *Id.* § 27.001(2)–(4); *see also Krasnicki v. Tactical Entm't, LLC*, No. 05-18-00463-CV, 2019 WL 2136155, at *3 (Tex. App.—Dallas May 16, 2019, no pet.). For purposes of the exercise of free speech, the communication must be made in connection with a "matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental,

---

[1] Damonte does not contend that his right to petition was implicated by Hallmark's claims.

economic, or community well-being; the government, a public official or public figure; or a good, product, or service in the marketplace. *Id*. § 27.001(7).

In his brief on appeal, Damonte contends that Hallmark's petition demonstrates how its legal action is based on, related to, or in response to Damonte's exercise of free speech. Damonte points to the allegation in the petition that he solicited employees to collude in a scheme to compete with Hallmark using confidential information and argues that such an alleged scheme between Damonte and his fellow employees would necessarily have required communications protected by the TCPA.

At oral argument, Damonte abandoned this argument in recognition of this Court's recent opinion in *Dyer v. Medoc*. In *Dyer*, we concluded that discussions among alleged tortfeasors to misappropriate confidential and proprietary information were not communications made in connection with a matter of public concern. *See Dyer*, 573 S.W.3d at 428. Damonte attempts to distinguish this lawsuit from *Dyer* by arguing that, in *Dyer*, one of the defendants admitted there was a conspiracy to use and disclose the plaintiff's confidential information for the purposes of aiding and abetting a competitive business. *Id*. at 422. In contrast, Damonte asserts that he has denied any conspiracy occurred in this case and the only conversations he had with his co-workers concerned their complaints about Hallmark. Damonte argues these communications about workplace complaints were made in connection with "a good, product, or service in the marketplace" and are the actual basis of Hallmark's claims.[2]

To trigger the TCPA's protection, the legal action brought against the movant must be factually predicated on alleged conduct that falls within the scope of the TCPA's definition of the

---

[2] In his declarations, Damonte referenced communications with Hallmark executives in which he allegedly informed them about the complaints being made by other employees. Damonte made clear during oral argument that he was not contending Hallmark's lawsuit was based on, related to, or in response to these communications and he referenced them only to show that Hallmark was aware of the discussions he had with the other employees.

exercise of the right of free speech, association, or petition. *Id*. at 425. We cannot "blindly accept" attempts by the movant to characterize the claims as implicating protected expression. *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd). To the contrary, we view the pleadings in the light most favorable to the non-movant, favoring the conclusion that its claims are not predicated on protected expression. *Id.* Any activities by Damonte that are not a factual predicate for Hallmark's claims are not pertinent to our inquiry regarding whether the TCPA applies. *Id*.

Although Damonte strenuously denies any tortious conduct occurred, nothing in Hallmark's lawsuit suggests its claims are predicated on anything other than Damonte's alleged involvement in a scheme to misappropriate and use Hallmark's confidential information. "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh*, 526 S.W.3d at 467. The allegations against Damonte clearly are not based on, related to, or in response to conversations Damonte purportedly had with employees about problems they were having with the company. Because we have already held that claims based on communications among alleged tortfeasors to misappropriate confidential and proprietary information are not communications made in connection with a matter of public concern, we conclude Damonte failed to establish that Hallmark's claims are based on, related to, or in response to his exercise of his right to free speech as defined by the TCPA. *See Dyer*, 573 S.W.3d at 428.

## IV. Right of Association

Damonte also contends Hallmark's lawsuit is based on, related to, or in response to his exercise of his right of association. The TCPA broadly defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id*. at 425. The nature of the communication must

involve public or citizen's participation. *Id*. at 426. This Court has concluded that applying the right of association to private communications related to an alleged conspiracy to misappropriate confidential business information would be "illogical" and lead to an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation. *Id*.

Damonte again tries to fit this lawsuit within the purview of the TCPA by asserting that Hallmark's claims are actually based on his communications with other employees about their workplace complaints and the business of insurance. Damonte argues Hallmark's true intent in bringing this suit was simply to prevent him from associating with his former co-workers. As with Damonte's freedom of speech argument, we cannot simply accept Damonte's attempts to recast the factual basis of the claims made against him in a manner that implicates a protected right. *See Sloat*, 513 S.W.3d at 504. Viewing the pleadings in the light most favorable to Hallmark, as we must, we conclude the only implicated communications are those related to a scheme to misappropriate and wrongfully disclose and/or use the company's confidential information. Such communications are not protected by the right of association under the TCPA. *See Dyer*, 573 S.W.3d at 426.

## Conclusion

Based on the foregoing, we resolve Damonte's first three issues against him. This resolution makes it unnecessary for us to address Damonte's remaining issues. We affirm the trial court's order.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

180874F.P05

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAMES DAMONTE, Appellant

No. 05-18-00874-CV        V.

HALLMARK FINANCIAL SERVICES,
INC. AND HEATH XS, LLC, Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-05976.
Opinion delivered by Justice Reichek.
Justices Whitehill and Molberg
participating.

In accordance with this Court's opinion of this date, the order of the trial court denying JAMES DAMONTE's motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellees HALLMARK FINANCIAL SERVICES, INC. AND HEATH XS, LLC recover their costs of this appeal from appellant JAMES DAMONTE.

Judgment entered July 12, 2019