**Affirmed and Memorandum Opinion filed April 14, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-20-00413-CV

---

## AMERICAN INTERNATIONAL HOLDINGS CORPORATION, JACOB COHEN, AND EVERETT R. BASSIE, Appellants

**V.**

## ROBERT HOLDEN, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2019-75180**

---

## M E M O R A N D U M   O P I N I O N

Appellants, American International Holdings Corp. (AMIH), Jacob Cohen, and Everett R. Bassie, challenge the trial court's denial of their motions to dismiss brought pursuant to the Texas Citizens Participation Act (TCPA).[1] Appellee Robert Holden sued appellants for a declaratory judgment, breach of contract, conversion, and fraud. Concluding that the TCPA does not apply to the claims, we affirm.

---

[1] Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

## *Background*

In his original petition, Holden named only AMIH as a defendant. AMIH answered and filed a TCPA motion to dismiss. Holden then added Cohen and Bassie as defendants in an amended petition, and they answered and filed a notice of removal to federal court, alleging the case involved a federal question. When the case was subsequently remanded back to the Texas trial court, Cohen and Bassie filed their own TCPA motion. Holden also filed objections to the TCPA motions, primarily complaining that the motions were untimely. The trial court overruled Holden's objections and denied both TCPA motions without stating a basis for the rulings. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (authorizing interlocutory appeal of order denying TCPA motion to dismiss).

In his live pleading, the first amended petition, Holden states claims for conversion, fraud, and a declaratory judgment against all appellants and a claim for breach of contract against only AMIH. Because appellants' motions were only addressed to the declaratory judgment, breach of contract, and conversion claims, our discussion will likewise be limited to those claims.[2]

In his amended petition, Holden alleges that in January and again in April 2018, he was contacted by Daniel Dror, the financier and largest shareholder of AMIH, and offered positions as chief executive officer, president, and director of AMIH, which Holden described as a "public shell company." Holden says that he was also offered a large share in ownership of the company. In April and May 2018, Holden met with Dror and other members of the company, including Bassie.

---

[2] We note, however, that the current version of the TCPA "does not apply to . . . a legal action based on a common law fraud claim." Tex. Civ. Prac. & Rem. Code § 27.010(a)(12); *Brann v. Guimaraes*, No. 01-19-00439-CV, 2021 WL 2690869, at *8 (Tex. App.—Houston [1st Dist.] July 1, 2021, pet. denied) (mem. op.).

At this meeting, it was decided Holden would serve as CEO and receive 3.8 million shares of AMIH stock and a salary. According to Holden, each member present at the meeting agreed to the terms. The terms were also recorded in meeting minutes circulated to all attendees and reported in a Securities and Exchange Commission (SEC) Form 8-K, which is used to alert shareholders to events that may have a material effect on a company.

It was also discussed at the meeting that Holden would file a "doing business as" certificate with the Harris County Clerk's office in the name of Digital Marketing Interactive, Holden's own company, which effectively placed it under AMIH's umbrella. Holden did so, which he says solidified his position as CEO of AMIH. Holden also stated that he acted to "clean and make current" AMIH's operations by, among other things, paying old tax obligations and updating its SEC filings.

At another company meeting in May 2018, Holden expressed concern that the company was undercapitalized. Dror allegedly suggested issuing press releases to positively impact the company's stock price, which apparently made some members uncomfortable "as it mirrored the objectives of a pump and dump strategy" designed to inflate the stock price for the near term.

Holden states that in July 2018, he decided on a growth strategy for AMIH that included acquiring another company in Oklahoma. The AMIH board of directors agreed with this strategy, and a verbal agreement on sales terms was reached. However, according to Holden, Dror then "suddenly and unexpectedly" refused to honor his commitment to fund AMIH operations including overhead and salaries and threatened to dilute the value of Holden's stock shares. Holden resigned as CEO, president, and board member on August 18, 2018.

According to Holden, his shares are unrestricted and available to trade in the

3

open market under Rule 144 of the Securities and Exchange Act of 1933.[3] He alleges, however, that AMIH continues to block his ability to trade his shares and has issued millions of additional shares, greatly diluting the value of his shares. He further asserts that because this threat of dilution is not part of any strategic business plan and his receipt of the shares was unconditional, the conduct was unlawful. Additionally, he contends appellants drove up the price of their own shares before flooding the market with new shares by blocking the unrestricted trading of shares by other shareholders.

Regarding AMIH's SEC filings, Holden asserted that when AMIH originally reported his appointment and receipt of shares, the Form 8-K stated that he was not a party to any contract or arrangement, in other words, according to Holden, there were no specific acts or tenure required of him in those positions to receive the shares. When AMIH reported that Holden had resigned, the Form 8-K stated that the resignation was not because of any disagreement and was not related to the company's operations, policies, or practices. However, AMIH subsequently reported that it was seeking recovery of the shares from Holden because of an unfulfilled contract obligation. Holden contends that this most recent report contradicted the prior two.

In his declaratory judgment claim, Holden asserted that as made clear in the Form 8-K filing on May 31, 2018, he was awarded 3.8 million shares in AMIH in exchange for becoming president and CEO. As also recorded in the Form 8-K, no conditions—such as a certain tenure of service—were placed on the award. Holden therefore sought a declaration of his rights as owner of those shares.

---

[3] In his amended petition, Holden erroneously states Rule 144 was promulgated under either an act of 1934 or 1943. The parties now appear to agree that the proper year of the act was 1933.

In his breach of contract claim against AMIH, Holden asserted a valid contract existed between himself and AMIH under which he agreed to become president and CEO of the company. He states that the agreement was memorialized in a Form 8-K which disclosed the award of 3.8 million shares and the change in leadership. Holden also notes that the Form 8-K indicated there were no conditions associated with the appointment. Holden claims that the refusal to recognize his shares and permit him to freely trade them is a breach of the contract.

In his conversion claim, Holden asserted appellants deliberately and in intentional violation of Rule 144 continue to deny him the right to trade his shares freely. Holden further notes that appellants' earlier Form 8-K filings reported Holden received his shares without any commitments on his part while the later Form 8-K reported Holden made commitments in exchange for the shares. In his prayer, Holden sought, among other things, actual damages and attorney's fees.

### The TCPA

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *Booster Fuels, Inc. v. Fuel Husky, LLC*, No. 14-19-00912-CV, 2021 WL 5118486, at *2 (Tex. App.—Houston [14th Dist.] Nov. 4, 2021, no pet. h.) (mem. op.); *see generally* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. The purpose of the statute is to identify and summarily dispose of lawsuits that are intended only to chill First Amendment rights, not to dismiss meritorious lawsuits. *See In re Lipsky*, 460 S.W.3d at 589; *Booster Fuels*, 2021 WL 5118486, at *2; *see also* Tex. Civ. Prac. & Rem. Code § 27.002.

To effectuate its purpose, the TCPA provides a three-step process for determining whether a lawsuit or claim should be dismissed. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). Under the first

step, the court dismisses the action if the moving party demonstrates by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. Tex. Civ. Prac. & Rem. Code § 27.005(b); *Creative Oil & Gas*, 591 S.W.3d at 132.[4] But under the second step, the court may not dismiss the action if the non-moving party establishes by clear and specific evidence a prima facie case for each essential element of the claim. Tex. Civ. Prac. & Rem. Code § 27.005(c); *Creative Oil & Gas*, 591 S.W.3d at 132. Under the third step, the movant can still win dismissal if it establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. Tex. Civ. Prac. & Rem. Code § 27.005(d); *Creative Oil & Gas*, 591 S.W.3d at 132.

Whether the TCPA applies to a particular claim is an issue of statutory interpretation that we review de novo. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *Booster Fuels*, 2021 WL 5118486, at *2. We view the pleadings and evidence in the light most favorable to the non-movant. *Booster Fuels*, 2021 WL 5118486, at *2. When construing a statute, our objective is to determine and give effect to the legislature's intent. *See Youngkin*, 546 S.W.3d at 680. We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

### *Analysis*

In their sole issue, appellants assert the trial court erred in denying their TCPA motions. Under this issue, they argue the trial court properly overruled

---

[4] The previous version of section 27.005(b) applied to claims that were based on, *related to*, or in response to an exercise of certain rights. The current version applicable in this case removed the "relates to" language from the provision, making its reach significantly narrower. *See Mireskandari v. Casey*, 636 S.W.3d 727, 735 n.8 (Tex. App.—Dallas 2021, pet. filed) (discussing revision and collecting cases).

Holden's objections to the motions; the TCPA applies to the declaratory judgment, breach of contract, and conversion claims; and Holden failed to meet his burden under the TCPA to present evidence establishing a prima facie case for each contested claim. Because we conclude the TCPA does not apply to the claims in this case, we need not address appellants' other arguments.

Appellants contend that the TCPA applies to certain of Holden's claims because the claims are based on or in response to appellants' exercise of the right to free speech. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)(A). In the context of the TCPA, an "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern." *Id*. § 27.001(3). "Communication," as used in the statute, "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). And, as relevant to appellants' arguments in this appeal, a "[m]atter of public concern" includes "a statement . . . regarding . . . a subject of concern to the public." *Id*. § 27.001(7)(C).

Appellants urge that Holden's references to AMIH's Form 8-Ks in his amended petition demonstrate that his claims were based on or in response to communication regarding a subject of concern to the public because those filings "implicate publicly traded securities and SEC regulations." Appellants cite *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017), for the proposition that allegations in a plaintiff's pleadings alone are sufficient to satisfy a TCPA movant's burden to show that a legal action is based on or in response to the exercise of the right of free speech. Appellants do not rely on any other authority in this section of their brief or reply brief except the TCPA itself. As stated, we view the pleadings in the light most favorable to the non-movant. *Booster Fuels*, 2021 WL 5118486, at *2; *see also Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin (Tex. App.

7

2015, pet. dism'd) ("[W]e do not blindly accept attempts by [defendants] to characterize [the] claims as implicating protected expression. To the contrary, we view the pleadings in the light most favorable to [plaintiff]; i.e., favoring the conclusion that her claims are not predicated on protected expression."). Appellants also do not cite any other evidence in support of their assertion that Holden's claims are based on or in response to their exercise of first amendment rights.[5]

As detailed above, in his breach of contract claim, Holden asserted a valid contract existed between himself and AMIH under which he was to become CEO, president, and director of the company, and in exchange, he was to receive 3.8 million shares of stock. He states that AMIH's ongoing refusal to recognize his shares and permit him to freely trade them is a breach of that contract. Likewise, in his declaratory judgment claim, Holden alleges he was awarded the shares in exchange for becoming president and CEO and requests a declaration of his rights in those shares. And, in his conversion claim, he complains that appellants continue to deny him his right to trade the shares freely.

For each of these claims, Holden references AMIH's Form 8-Ks as evidence to support the claim. But the claims are not based on or in response to the SEC filings. For example, the breach of contract claim relies on an alleged agreement between Holden and AMIH; he claimed the agreement was "memorialized" in a Form 8-K, but he does not allege the form itself constituted a contract, and appellants offer no explanation as to how it could have. The alleged breach was the refusal to recognize the shares and permit their free trade, and Holden does not rely on any SEC filing as evidence of that refusal and restraint. The declaratory action

---

[5] Holden attached his own comprehensive affidavit and two Form 8-Ks to his amended petition. Appellants did not present any evidence in support of their motions.

8

likewise rests on the agreement and his entitlement to the shares per the agreement. Again, he references a Form 8-K reporting the award of shares but not as the agreement itself. Lastly, the conversion claim is based on appellants' alleged refusal to permit Holden to trade his shares freely. Under the claim, Holden notes that AMIH made inconsistent statements in its Form 8-Ks, but this is offered as evidence of the conversion claim, not the basis for the claim itself. As the purported reporting of events that materially affect the company, the Form 8-Ks will likely be important evidence in the case, but the filings themselves are not the basis for the claims made. *See, e.g.*, *Allied Orion Grp., LLC v. Pitre*, No. 14-19-00681-CV, 2021 WL 2154065, at *4-5 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (noting petition did not allege direct harm from verbal communication but from conduct and holding such conduct did not constitute communication under the TCPA); *Clinical Pathology Labs, Inc. v. Polo*, 632 S.W.3d 35, 45 (Tex. App.—El Paso 2020, pet. denied) (explaining that the communications in question constituted evidence the parties would likely present at trial but the lawsuit itself was not factually predicated on them); *In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op.) (recognizing "a distinction between communications used as evidence to support a claim . . . and a claim that is 'based upon, relate[d] to, or . . . in response to' that communication under the TCPA.").[6]

Holden's breach of contract, conversion, and declaratory judgment claims were not based on or in response to the movant's exercise of the right of free speech. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)(A). The claims were not

---

[6] We note that each of these cases was decided under the prior, broader version of section 27.005(b), which applied to claims that were based on, *related to*, or in response to an exercise of certain rights. *See supra* n.4.

simply retaliatory and did not seek to silence or intimidate appellants on matters of public concern. *See In re Lipsky*, 460 S.W.3d at 586; *Booster Fuels*, 2021 WL 5118486, at *2. Likewise, these claims were not aimed at chilling appellant's First Amendment rights. The TCPA does not apply to these claims.

We overrule appellants' sole issue and affirm the trial court's order denying the TCPA motions to dismiss.

/s/ Frances Bourliot
   Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer.