# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00390-CV

---

**Megatel Homes III, LLC, Appellant**

**v.**

**Woodhull Ventures 2015, L.P., Appellee**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
NO. 18-0635-C425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Megatel Homes III, LLC appeals from the trial court's granting of summary judgment in favor of appellee Woodhull Ventures 2015, L.P., and its denial of Megatel's request for attorney's fees under former Texas Rule of Civil Procedure 91a and the Texas Citizens Participation Act (TCPA). *See* Tex. R. Civ. P. 91a.7;[1] Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. We affirm the trial court's granting of summary judgment and that Megatel take nothing on its claims against Woodhull and the court's denial of attorney's fees under the TCPA. However,

---

[1] Rule 91a.7 was amended in 2019, but those amendments do not apply to this case, which was filed in the trial court before September 1, 2019. *See* Tex. R. Civ. P. 91a cmt. 2019 ("A civil action commenced before September 1, 2019, is governed by the rule as adopted in Misc. Docket No. 13-9022."). We thus cite to the rule as it read before the 2019 amendment. *See* Misc. Docket No. 13-9022 (Tex. Feb. 12, 2013, order), *available at* http://www.txcourts.gov/All_Archived_Documents/SupremeCourt/AdministrativeOrders/miscdocket/13/13902200.pdf.

we reverse the court's final judgment in part and remand for consideration of Megatel's entitlement to attorney's fees under Rule 91a.

**FACTUAL AND PROCEDURAL SUMMARY**

On February 20, 2017, Megatel paid $350,000 in earnest money and entered into a contract with Woodhull under which Woodhull would sell Megatel 135 "completed, fully-buildable residential lots" on which Megatel planned to build houses in a master-planned community. The lots were to be sold in three "takedown" transactions conveying between twenty and sixty lots in each closing. The relevant provisions of the contract are:

> 1.29 "**Property**" means the Lots together with the Improvements, . . . as well as lands underlying adjacent streets or roads which belong or in any way pertain to the Lots. . . .
>
> 1.36 "**Subdivision**" means the master planned community being developed by Seller on the real property illustrated on [an attached exhibit].
>
> 1.37 "**Substantially Completed**" and "**Substantial Completion**" means the applicable Lots have been completed, at Seller's expense, in accordance with the Lot Construction Plans and Block Grading Plans [that] have been approved by all applicable Governmental Authorities, are acceptable to the City, platted, improved, accepted and approved by the City and, to the extent applicable, all utility districts or companies having jurisdiction over the development of the Lots, all in buildable condition subject only to the creation of building pads thereon by Buyer and with building permits for the erection of single-family detached residences being available for issuance . . . . In that regard, Seller shall also fulfill all of the following requirements with respect to the Lots to achieve Substantial Completion (a summary of which is set forth on Exhibit G attached hereto):[2]
>
> > [(a) provide a registered, professional engineer's certification that the Lots are outside the 100-year flood plain or flood-prone area;
> >
> > (b) provide a registered, professional engineer's certification that all streets, utilities and other subdivision improvements had been installed

---

[2] For clarity and brevity, we summarize the required substantial-completion items.

2

substantially in accordance with the Lot Construction Plans and Block Grading Plans approved by applicable governmental authorities;

(c) execute any applicable utility contracts;

(d) ensure that all lots are rough graded, benched, and/or sloped in accordance with the Block Grading Plans, with any compaction done to HUD-79G certification standards and with Buyer being responsible for grading final building pads and any needed drainage swales;

(e) install all street signs and street lights or agree to complete those installations within ninety days of Substantial Completion;

(f) provide print and electronic copies of the recorded Final Plat and address plat;

(g) provide a letter from a surveyor or the project engineer stating that the corners of each lot are staked and flagged;

(h) provide the lots' geotechnical engineer's HUD-79G certification letter;

(i) provide a stormwater-pollution-prevention plan for the subdivision and construct and install all erosion-control measures as required;

(j) provide Lot Construction Plans prepared during the course of development, including plans for streets and other public improvements, landscaping, and utilities;

(k) pay or agree to pay all developer-related charges, fees and assessments related to the lots;

(l) ensure the lots are clean and free of debris or detrimental material;

(m) provide a copy of the recorded Restrictive Covenants; and

(n) provide the planned locations of any cluster mailboxes (CBUs) and agree to install the CBUs within sixty days after closing.]

3.2 <u>Buyer's Termination Right</u>. At any time prior to the expiration of the [thirty-day] Inspection Period, Buyer may, in its sole discretion and for any reason or for no reason, elect to terminate the acquisition of the Property under this Agreement. If Buyer, by written notice to Seller (the "Notice of Continuation"), waives its right to terminate this Agreement pursuant to this Section 3.2 prior to the expiration of the Inspection Period, then this Agreement shall continue in full force and effect. If Buyer does not give Seller the Notice of Continuation on or before the last day of the Inspection Period, then this Agreement shall automatically terminate upon expiration of the Inspection Period. . . .  If Buyer delivers its Notice of Continuation

. . . , this Agreement shall continue to closing upon expiration of the Inspection Period and Buyer shall be deemed to have elected to continue this Agreement to the completion of the acquisition of the Property on the terms herein and the Earnest Money Deposit shall thereafter not be refundable to Buyer except upon the terms otherwise expressly set forth herein.

3.3 Within seven (7) days after the Effective Date, Seller will (i) deliver to Buyer copies of the following documents, or (ii) advise Buyer that certain of the following documents are not available and Buyer shall determine whether to acquire the Property without such information, in each case to the extent in Seller's possession pertaining to the use, development or ownership of the Property (the "Property Documents"):

> (a) any engineering reports and flood studies relating to the Subdivision;

> (b) a copy of the Preliminary Plat submitted to the City for the Subdivision;

> (c) Seller's soils report for the Property or Subdivision signed by Seller's geotechnical engineer;

> (d) Seller's environmental report(s) for the Property or Subdivision . . . .

3.6(e) Notice of Substantial Completion. Upon Substantial Completion with respect to the applicable Takedown Tract, Seller shall send written notice (a "Substantial Completion Notice") to Buyer. Upon receipt of a Substantial Completion Notice for the applicable Takedown Tract, Buyer shall have a period of seven days within which to inspect the applicable Takedown Tract and evaluate the information and documentation provided by Seller and to notify Seller in writing if any, in Buyer's reasonable, good faith judgment it does not believe the Lots are Substantially Complete. . . . Buyer's failure to so notify Seller within that 7-day period shall be deemed Buyer's agreement to proceed to Closing on the applicable Takedown Tract. . . . If Seller does not cure Buyer's objections within said 15-day period, Buyer may elect, by delivering written notice to Seller within ten days after Seller's cure period expires, either (i) to waive such objections and continue this Agreement in full force and effect or (ii) to cure the matter so objected to, and to deduct the cost of such cure from the Purchase Price for the applicable Takedown Tract; or (iii) delay Closing with respect to the applicable Lot or Lots affected by the objections identified in Buyer's timely made notice until such Lot or Lots are Substantially Complete. Buyer's failure to make a written election within such ten-day period shall be deemed Buyer's agreement to waive the objections and continue to the scheduled Closing on the applicable Takedown Tract. . . .

11.2 Notices. All written notices and demands of any kind which either party may be required or may desire to serve upon the other party in connection with this Agreement shall be in writing, signed by the party or its counsel, and shall be (i) delivered by hand delivery (effective upon actual delivery or refusal at the proper

4

address hereunder); or (ii) sent by nationally recognized overnight delivery service such as Federal Express or UPS . . . . The parties shall each use good faith efforts to provide a courtesy email copy of any notice delivered under this Agreement . . . . Courtesy email copies of notices are for informational purposes only, and a failure to give or receive courtesy email copies of any notice shall not be deemed a failure to give notice.

Exhibit G: SUMMARY OF SUBSTANTIAL COMPLETION ITEMS

1. Seller's existing environmental site assessment [*pursuant to Section 3.3(a)*]
2. Soil Report [*pursuant to Section 3.3([c])*]
3. HUD-79G Letter [*pursuant to Section 1.37(h)*]
4. Lot Grading Plans [*pursuant to Section 1.2*]
5. MUD or PUD Forms (if applicable) [*pursuant to Section 3.3(f)*]
6. Any impact fee agreements, facilities agreements and development agreements affecting the Property or the Subdivision for which the Buyer would be responsible [*pursuant to Section 3.3(f)*]
7. Restrictive Covenants [*pursuant to Section 1.37(m)*]
8. HOA Contact [*pursuant to Section 3.6(a)*]
9. Final Plat [*pursuant to Section 1.37(f)*]
I0. Address Plat [*pursuant to Section 1.37(f)*]
11. Lot Construction Plans [*pursuant to Section 1.37(j)*]
12. Evidence that Lots have been accepted and approved by the City [*pursuant to Section 1.37*]
13. Cluster Mailbox location [*pursuant to Section 1.37(n)*]
14. Surveyor's letter verifying that Lot corners have been pinned [*pursuant to Section 1.37(g)*]

On March 1, 2017, Woodhull gave Megatel a soil report describing the conditions underneath various streets in the community south of the lots Megatel was to buy. After the contractual inspection period ended, the parties opted to continue with the sale and development process. On March 2, 2018, after clearing the lots and preparing them for closing, Woodhull representative David Nairne emailed Megatel representative JJ Singh that he was providing Woodhull's "substantial completion items," including an updated "Geotechnical Pavement Report" showing the soil conditions at ten to fifteen test pit locations in the property. On April 25, Woodhull's law firm sent Megatel a letter via FedEx and email stating that Substantial Completion of the lots in the first takedown had occurred on April 12; that in a conversation between the two

5

parties earlier in the day, "Seller and Buyer agree that all of the Lots in the First Takedown Tract are Substantial Complete and both parties are working to prepare for the initial closing"; and that Woodhull had "agreed to [Megatel's] request to set the Initial Closing Date for May 25, 2018."

On May 2, Singh emailed a reply to Nairne's March 2 email, stating, "I was going over the documents that you sent and I am missing some of them," including, "Need final geo-tech study. What you had sent was HUG-79G and Geo-Technical Investigation Pavement Thickness Recommendations." On May 3, Nairne responded, stating in relevant part:

> In my last call with Zach [a Megatel representative], he confirmed the Substantial Completion items per the contract had been received. Thus what you list [in the email asking for additional documents] are not required completion items for the Closing, however we can help out as provided below: . . .
>
> Just like at Oak Creek [an earlier similar real-estate transaction between the parties], we do NOT provide any geo tech study, I think that is a Dallas concept. You can contract separately for this to be done with a soils engineer (we use MLA for this project) if desired.

On May 14, Megatel sent Woodhull a letter via FedEx an email stating that "Megatel denies that Substantial Completion has occurred" in part because "Megatel requires a Soil Report covering the Property and Lots . . . in order to design the slab structure." Woodhull responded that Megatel had not provided such notice within seven days of receiving the Substantial Completion Notice; that Woodhull had already provided its existing soil reports; and that the contract did not require Woodhull to obtain additional soil reports. When Megatel failed to appear at the May 25 closing, Woodhull sent a "Seller's Default Notice" stating that Megatel had thirty days to cure its default and close and that a failure to do so would allow Woodhull to exercise its rights under the contract.

6

Megatel filed suit asserting a claim for breach of contract.[3] Megatel sought actual damages, exemplary damages, and attorney's fees "under applicable law" and the contract.

Woodhull filed a motion to dismiss under Rule 91a, which the trial court denied, and then unsuccessfully sought relief through petitions for writ of mandamus filed in this Court and the Texas Supreme Court. *See In re Woodhull Ventures 2015, L.P.*, No. 18-0835 (Tex. Oct. 12, 2018) (orig. proceeding [mand. denied]); *In re Woodhull Ventures 2015, L.P.*, No. 03-18-00503-CV, 2018 WL 4039588 (Tex. App.—Austin Aug. 24, 2018, orig. proceeding [mand. denied]) (mem. op.). Woodhull also filed a motion to dismiss under the TCPA, which the trial court denied. We affirmed that denial, holding that Megatel had shown that its claims fell within an exception to the TCPA. *See Woodhull Ventures 2015, L.P. v. Megatel Homes III, LLC*, No. 03-18-00504-CV, 2019 WL 3310509, at *1 (Tex. App.—Austin July 24, 2019, no pet.) (mem. op.).

Woodhull next filed a counterclaim for breach of contract, seeking to retain Megatel's earnest money and to be awarded attorney's fees under the contract and Chapter 38 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 38.001–.006 ("Attorney's Fees"). It also filed a traditional and no-evidence motion for summary judgment on Megatel's claims. Megatel then filed an amended petition alleging that the contract was ambiguous, adding a claim for breach of express warranty, and requesting specific performance. Megatel stated that it sought attorney's fees under the contract, Chapters 37 and 38 of the Civil Practice and Remedies Code, *see generally id.* §§ 37.001–.011 ("Declaratory Judgments"), 8.001–

---

[3] Megatel also asserted a claim for statutory fraud and sought a declaratory judgment but does not challenge the take-nothing judgment rendered against it on those issues or put forth any argument relevant to those issues.

7

.006, and Chapter 27 of the Business and Commerce Code, Tex. Bus. & Comm. Code §§ 27.01–.02 ("Fraud").

The trial court held a hearing on Woodhull's motion for summary judgment and signed an order granting Woodhull's motion, ordering that Megatel:

> shall take nothing on all of its claims in its First Amended Petition. To be clear, Plaintiff shall take nothing on its claims for breach of contract, breach of express warranty, and statutory fraud, and its request for declaratory judgment is hereby denied. Plaintiff's request for attorneys' fees in its First Amended Petition also is hereby denied.

Woodhull then sought summary judgment on its counterclaim for breach of contract and its request for attorney's fees. In response, Megatel filed a "Supplement to First Amended Petition," alleging ambiguity in the contract's meaning of "successful party" in the context of the parties' requests for attorney's fees. Megatel argued that it had a right to attorney's fees—independent of whether it prevailed on any of its causes of action—because it had prevailed against Woodhull's motions to dismiss under Rule 91a and the TCPA. The trial court signed a final judgment reciting that it had granted Woodhull's motion for summary judgment on Megatel's claims "in [its] entirety, dismissing all of Megatel's claims against Woodhull." The court also stated that it had held a hearing on Woodhull's "second motion for summary judgment and request for attorneys' fees and granted those motions in their entirety." The court determined that Woodhull was entitled to retain Megatel's earnest money deposit and to an award of attorney's fees and costs.

**DISCUSSION**

On appeal, Megatel raises the following issues: 1) the trial court erred in denying Megatel's request for attorney's fees under Rule 91a and the TCPA; 2) Megatel showed ambiguities in the contract related to the soil report that Woodhull was required to provide; and 3) the court erred in granting summary judgment on Megatel's claim for breach of express warranty. We first address the latter two issues relating to the granting of summary judgment against Megatel's claim.

*Summary Judgment on Megatel's Claims for Breach of Contract and Breach of Warranty*

We turn first to the trial court's granting of summary judgment on Megatel's claims against Woodhull. We apply well-established standards of review, viewing the summary-judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable to do so, and disregarding contrary evidence unless unreasonable to do so. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017) (quoting *SeaBright Ins. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015)). A movant seeking a traditional summary judgment must prove that no material fact issue exists and that it is thus entitled to judgment as a matter of law. *SeaBright Ins.*, 465 S.W.3d at 641. A party defending against a no-evidence motion, on the other hand, must produce evidence raising a genuine issue of material fact as to the elements challenged by the movant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

Megatel contends that it raised an issue of fact as to whether Woodhull, by agreeing to sell "buildable lots," contractually obligated itself to produce a report analyzing the soil on the lots. It further asserts that its claim for breach of express warranty was a "separate cause of action

9

from breach of contract" and that the trial court erred in rendering judgment against Megatel on the warranty claim when Woodhull had not filed an amended or supplemental motion for summary judgment.

Woodhull contracted to sell Megatel "buildable lots," which Megatel asserts means lots "that provide Megatel the 'ability to construct safe, stable housing,'" a definition it takes from our opinion related to Woodhull's TCPA motion. *See* 2019 WL 3310509, at *1. Megatel insists that because of the assurance that the lots would be "buildable," the contract can be construed to require Woodhull to provide a report "encompassing the 'Property' or 'Subdivision' . . . for 135 'buildable Lots.'" It further argues that a soil report for the property "necessarily encompasses soils information for the 'Lots' *and also* 'lands underlying adjacent streets or roads,'" while a subdivision soil report "encompasses soils information for the entire master planned community, not just selected portions." Because it put forth a reasonable construction, Megatel contends, it showed ambiguity in the contract language and raised a fact issue sufficient to defeat summary judgment.

Megatel's argument, however, elides the fact that the only portion of the contract that references a soil report is section 3.3(c), which obliged Woodhull to provide reports within seven days of the contract's effective date, including a "soils report for the Property or Subdivision signed by Seller's geotechnical engineer," but only to the extent it had such reports in its possession.[4] In the section defining "substantial completion," the contract does not list a soil report

---

[4] As summary-judgment evidence, Woodhull provided excerpts from the depositions of Megatel's president and Singh. Megatel's president conceded that Woodhull's initial report, provided soon after the parties signed the contract in 2017, was sufficient for Megatel to move forward with the contract, although he insisted that Woodhull "would not have access to the final soil report till they have [the] subdivision completed and they can deliver the buildable lot." And Singh agreed when asked whether "the contract says only that Woodhull has to provide a soils

10

as a required item, and although Exhibit G, the summary of substantial-completion items, includes "soil report," it specifies that that report is pursuant to section 3.3, thus referencing a report only "to the extent in [Woodhull's] possession." Nowhere in the contract did the parties specify that Woodhull was required to obtain a soil report that it did not already have in its possession, much less that it was required to obtain a report describing the soil conditions for each individual lot.

Further, elsewhere in the contract there are indications that Megatel was responsible for soil testing beyond any reports Woodhull had in its possession at the time of the contract's effective date. For instance, section 3.1, "Inspection," states that Megatel had an inspection period to "physically inspect the property" and conduct due diligence, including "taking soil and ground water samples." Section 3.4, "Restoration," requires Megatel to return the property to its present condition "[a]fter any tests of investigation on the Property." And most importantly, section 10.4, "Disclaimer," states that Woodhull disclaimed any "warranties or guaranties of any kind of character . . . as to, concerning, or with respect to the property, including the nature and condition of the property and the suitability thereof for any and all activities and uses." That section goes on to disclaim any warranties related to geological conditions, including subsurface conditions, drainage, and "the fitness of the property for any particular purpose (Buyer affirming that Buyer has not relied on Seller's skill or judgment to select or furnish the property for any particular purpose, and that Seller makes no warranty that the property is fit for any particular purpose)." Megatel agreed that it would "examine and investigate the property"; that it would "rely solely upon its independent examination, study, inspection and knowledge of the property"; and that its

---

report during the first seven days if it had it," answering, "Okay, it does say that." Singh was also asked, "And it doesn't say anywhere else that Woodhull has to provide a second soils report or an additional soils report," and he answered, "That's correct."

11

determination of the "uses to which the property may be put" would be based on its own inspection, knowledge, and study of the property "and not on any information provided or to be provided by" Woodhull.

We hold that under the unambiguous language of the contract, Woodhull did not have an obligation to obtain a soil report in addition to the two it provided to Megatel.

Megatel next argues that it showed contractual ambiguity related to how Megatel could give notice that it disagreed that the lots were substantially complete—such written notice was required to be provided to Woodhull within seven days of its Notice of Substantial Completion or Megatel would be deemed to agree "to proceed to Closing."

Singh emailed Nairne on May 2, within seven days of Woodhull's April 25 substantial-completion notice. He stated, "I was going over the documents that you sent and I am missing some of them," and provided a list of requested documents, including, "Need final geo-tech study. What you had sent was HUD-79G and Geo-Technical Investigation Pavement Thickness Recommendations." Megatel asserts that Singh's email should be considered Megatel's written notice that it did not believe the lots were substantially complete, contending that the contract does not "unambiguously eliminate[]" email as a means of providing that notice. However, the contract states that "written notices . . . which either party may be required or may desire to serve on the other party in connection with this Agreement," "*shall be*" either hand-delivered or sent by "nationally recognized overnight delivery service." (Emphasis added.) Singh's May 2 email, which was not delivered by hand or an overnight delivery service, cannot be considered timely written notice disputing Woodhull's Notice of Substantial Completion.[5] Thus,

_____

[5] Further, as Woodhull notes, Singh's email did not actually assert that the lots were not substantially complete.

even if Woodhull was contractually required to provide additional soil reports, by its failure to provide written notice disputing substantial completion within seven days of Woodhull's notice, Megatel agreed to proceed to closing.

We hold that Woodhull did not breach the contract by refusing to produce additional soil reports beyond those already in its possession. The trial court therefore did not err in granting summary judgment in Woodhull's favor on Megatel's claim for breach of contract. We overrule Megatel's second issue.

We next consider Megatel's argument that the trial court erred in granting summary judgment on its claim for breach of Woodhull's express warranty that "[t]o Seller's knowledge, the Property Documents delivered to Buyer are not inaccurate, false or misleading in any material respect." Megatel amended its petition to add that claim, which it states "is separate" from its claim for breach of contract, after Woodhull filed its traditional and no-evidence motion for summary judgment, and Woodhull did not amend or supplement its motion to specifically address the warranty claim. Megatel insists that its breach-of-warranty claim is not the same as its breach-of-contract claim, arguing that Woodhull breached its express warranty "by delivering soils reports that are materially inaccurate, false, or misleading in comparison to what Megatel expected by the Contract." However, what Megatel "expected" is not the issue—the issue is what the contract required. Both Megatel's breach-of-express-warranty claim and its breach-of-contract claim hinge on whether Woodhull was contractually obligated to provide a different soil report than the ones it provided, a question we have already answered in the negative.

Although a movant for summary judgment generally must amend or supplement its motion to address claims added in a subsequent petition, an amended or supplemental motion is not required if the amended petition "essentially reiterates previously pleaded causes of action," if

13

a ground asserted in the motion for summary judgment "conclusively negates a common element of the newly and previously pleaded claims," or if "the original motion is broad enough to encompass the newly asserted claims." *Callahan v. Vitesse Aviation Servs., LLC*, 397 S.W.3d 342, 350 (Tex. App.—Dallas 2013, no pet.).

Megatel's claim for breach of express warranty relies on the same allegation as does its claim for breach of contract—that Woodhull failed to provide a contractually required soil report. And as discussed earlier, Woodhull established that it was not obliged to obtain a soil report other than those it had in its possession and provided to Megatel. That fact, in addition to defeating the breach-of-contract claim, also defeats Megatel's warranty claim because Woodhull's "Property Documents" cannot be viewed as materially inaccurate, false, or misleading under the contract for failing to include a report that was not required. The trial court did not err in granting summary judgment on Megatel's claim for breach of express warranty. We overrule Megatel's third issue.

Woodhull established that it was entitled to summary judgment, and we affirm the trial court's order as far as it grants Woodhull's defensive motion for summary judgment that Megatel take nothing on its claims against Woodhull.

### *Attorney's Fees Under Rule 91a and the TCPA*

We now turn to Megatel's remaining issue, arguing that the trial court erred in not awarding Megatel attorney's fees incurred in successfully defending against Woodhull's motions to dismiss under Rule 91a and the TCPA. As an initial matter, we consider Woodhull's contention that Megatel waived its right to attorney's fees under Rule 91a or the TCPA. Woodhull argues that Megatel never "separately pleaded that either Rule 91a or Section 27.009 provided any basis

14

for an[] award of fees" and instead claimed that its "defense against Woodhull's Rule 91a and TCPA motions supported its position that it was a 'successful party' under the contract." Woodhull also insists that Megatel waived its right to any attorney's fees because it never asked the trial court "to adjudicate any request for attorneys' fees before the court entered a final judgment."

Contrary to Woodhull's claim, in its "Supplement to First Amended Petition," Megatel did not seek attorney's fees *solely* under the contract. Instead, Megatel primarily sought attorney's fees under the contract "as a 'successful party' regarding numerous judgments in its favor" but also stated that it was entitled to attorney's fees "independent of its causes of action: to offset costs and expenses claimed by Woodhull as a 'successful party'; by Tex. Civ. Prac. & Rem. Code § 27.009; and by former Tex. R. Civ. P. 91a.7." Megatel also included a footnote quoting the version of Rule 91a in effect at the time it filed its lawsuit, which mandated the award of attorney's fees to the party that prevailed on a motion brought under the rule. And in the hearing on Woodhull's "offensive" motion for summary judgment related to its counterclaim and request for attorney's fees, Megatel noted that Woodhull's motion did not address its claim for attorney's fees under the TCPA or Rule 91a because those requests were not included in Megatel's first amended petition. Megatel said, "The supplemental petition filed by Megatel seven days ago raises those claims and specifically under the former Rule 91a, this Court has a mandatory duty to award such fees and costs sought by the prevailing party on that motion." Megatel argued that Woodhull's motion for summary judgment did not "specifically address that and so it would be inappropriate for this Court to rule on that motion and give them a final judgment disposing of our right to attorney's fees when this Court has a mandatory duty to award such fees," requesting an evidentiary hearing to consider its request for fees under Rule 91a and the TCPA. Thus, although

15

its pleadings could have been clearer in seeking attorney's fees under Rule 91a or the TCPA, we disagree that it waived those arguments.

As to the merits of Megatel's argument on appeal, Woodhull argues that Megatel, as the ultimately unsuccessful party and regardless of any piecemeal success on the earlier motions, is not entitled to any attorney's fees because the contract provides that the unsuccessful party shall pay the successful party's fees. Woodhull argues that the contract forecloses a "motion-by-motion approach to fee disputes" and seeks to extend the contract, which bars Megatel from recovering attorney's fees due to its loss on the merits of its claims, to also bar Megatel from recovering under Rule 91a or the TCPA. We decline to do so.

Rule 91a.7, as it read when Megatel filed its lawsuit in May 2018, provided that a trial court "must award the prevailing party on the [Rule 91a] motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award." Misc. Docket No. 13-9022 (Tex. Feb. 12, 2013, order), *available at* http://www.txcourts.gov/All_Archived_Documents/SupremeCourt/AdministrativeOrders/miscdocket/13/13902200.pdf, amended by Misc. Docket No. 19-9052 (July 11, 2019), *available at* https://www.txcourts.gov/media/1444382/199052.pdf. The plain language of the rule as it read at the time thus allowed for—and indeed mandated—a motion-specific consideration of attorney's fees. Megatel prevailed on Woodhull's motion to dismiss under Rule 91a, was entitled to its reasonable attorney's fees incurred in defending against that motion through Woodhull's petitions for writ of mandamus in this Court and the Texas Supreme Court, and requested such fees in its supplemental petition and at the hearing on Woodhull's second motion for summary judgment.

The trial court therefore abused its discretion by not awarding Megatel attorney's fees under the former Rule 91a.7.

As for the TCPA, if a motion to dismiss is denied and the trial court finds that the motion was "frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem. Code § 27.009(b). Thus, an award of attorney's fees to a claimant who successfully defends against a TCPA motion is discretionary. Megatel has not shown that the trial court abused its discretion in refusing to award attorney's fees for successfully defending against Woodhull's TCPA motion. *See, e.g.*, *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 221 (Tex. App.—Eastland 2019, pet. denied) (concluding that trial court abused its discretion in awarding nonmovant attorney's fees under TCPA with finding that motion was "intended to delay"; court was required to find that motion was filed with "sole intention" of delay); *Sloat v. Rathbun*, 513 S.W.3d 500, 510 (Tex. App.—Austin 2015, pet. dism'd) (stating that trial court expressly found TCPA motions were not frivolous, and its comments that "the manner in which the motions were litigated took time that could have been more productive if used in other ways, . . . cannot be read as a finding that the motions were filed with the sole intention of delaying the proceedings. In the absence of such a finding, an award of attorneys' fees is not authorized by the statute."). Indeed, Megatel did not attempt to argue that Woodhull's motion was frivolous or solely intended to delay. *See* Tex. Civ. Prac. & Rem. Code § 27.009(b); *Sloat*, 513 S.W.3d at 510. We therefore affirm the trial court's failure to award Megatel attorney's fees under the TCPA.

The trial court abused its discretion by not awarding Megatel attorney's fees under former Rule 91a.7, but there has been no showing that it abused its discretion by not awarding attorney's fees under the TCPA. We sustain Megatel's first issue in part and overrule it in part.

17

**CONCLUSION**

The trial court properly granted summary judgment on Megatel's claims for breach of contract and breach of express warranty and did not abuse its discretion in failing to award Megatel attorney's fees incurred in defending against Woodhull's motion to dismiss under the TCPA. However, the trial court did abuse its discretion in failing to award Megatel its reasonable attorney's fees incurred in defending against Woodhull's motion to dismiss under Rule 91a. We therefore reverse the trial court's final judgment as far as it altogether denies Megatel an award of attorney's fees. We remand the case to the trial court to hold a hearing on Megatel's costs and reasonable attorney's fees under Rule 91a. We affirm the remainder of the judgment.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Smith and Jones*

Affirmed in Part; Reversed and Remanded in Part

Filed: July 7, 2023

* Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).