**Opinion issued June 16, 2026.**



In the

# Court of Appeals

for the

# First District of Texas

———————————

## NO. 01-24-00755-CV

———————————

## ALLISON CAMILLE LARTIGUE A/K/A ALLISON C. LARTIGUE AND THE FREELANCE PARALEGAL, LLC, Appellants

v.

## KARLEANA L. FARIAS, Appellee

---

### On Appeal from the 234th District Court
### Harris County, Texas
### Trial Court Case No. 2024-23723

---

## MEMORANDUM OPINION[1]

---

[1] Appellants Allison Camille Lartigue and The Freelance Paralegal, LLC (collectively, Lartigue) filed a motion for rehearing of this Court's April 30, 2026 opinion and judgment. We deny the motion for rehearing, withdraw our April 30, 2026 opinion and judgment, and issue this opinion and judgment in their place. Our disposition remains the same.

Appellee Karleana L. Farias sued appellants Allison Camille Lartigue and The Freelance Paralegal, LLC (collectively, Lartigue) for stalking.[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 85.001-.006. Lartigue filed a motion to dismiss Farias's action under the Texas Citizens Participation Act (TCPA). *See id.* §§ 27.001-.011. The trial court denied Lartigue's motion, and Lartigue appeals from that interlocutory order. *See id.* § 51.014(a)(12) (providing right to interlocutory appeal from order denying motion to dismiss made under TCPA).

On appeal, Lartigue contends that the trial court erred in denying her motion because: (1) Lartigue met her burden to demonstrate that the TCPA applies to Farias's stalking claim; (2) Farias failed to establish, by clear and specific evidence, a prima facie case for each essential element of her stalking claim; and (3) Lartigue established affirmative defenses that bar Farias's claim. Because we conclude that Farias's stalking claim is not based on or in response to Lartigue's exercise of any right or act that the TCPA protects, we affirm the trial court's order denying her motion to dismiss.

---

[2] In the notice of appeal, the first appellant is erroneously named "Allison Camille Lartigue a/k/a Allison C. Lartigue, LLC." The original petition names two defendants: (1) Allison Camille Lartigue a/k/a Allison C. Lartigue and (2) The Freelance Paralegal, LLC. There is no entity named "Allison C. Lartigue, LLC" that is party to the instant suit.

## Background

The instant suit is related to a separate proceeding not before us. On December 14, 2023, the Unauthorized Practice of Law Committee of the State of Texas (the UPLC) filed suit against Lartigue and sought to enjoin her from practicing law without a license (the UPLC Litigation). Prior to filing suit, the UPLC had assigned Farias, an attorney, to investigate complaints made against Lartigue that Lartigue was practicing law without a license. Among other things, the UPLC alleged that Lartigue communicated with a potential client named Dale Keating and offered to draft a demand letter and notice of intent to sue on his behalf.

While the UPLC Litigation was pending, Lartigue sent Farias multiple emails and repeatedly called Farias's law firm. On February 29, 2024, Lartigue sent an email to Farias that stated, in part, "You need to come forward and state immediately who Dale keating is or else I will have the police knocking on your door."[3] That same day, Farias responded, stated that she was copying Lartigue's attorney on the email exchange, and requested that Lartigue stop communicating with her directly. Lartigue replied, "nah."

On April 7, 2024, Lartigue sent an email to Farias that referenced several provisions of the Texas Penal Code and Texas Civil Practice and Remedies Code,

---

[3]　　Unless an alteration is noted, the parties' communications are transcribed exactly as they appear without changes to spellings, capitalization, or punctuation.

suggesting that Farias committed criminal and civil violations. In that same email, Lartigue wrote, "It's worth mentioning that your 'Office' bears a striking resemblance to the shed (dump, as some may call it), positioned on the southwest corner of my Parents' $13 Million Dollar Beach House." That afternoon, Farias forwarded a copy of Lartigue's email to an email address associated with the Houston Police Department. A little over an hour later, Farias then sent an email to Lartigue's lawyer with the subject line: "I have pressed charges against Lartigue." In the body of the email, Farias wrote, "After the repeated calls to my office and multiple emails making threats, I made that decision for myself and my family, to make a report and file charges against Ms Lartigue."

The next morning, Lartigue sent an email to Farias that stated, among other things, "You are going to tell me who Dale Keating is today as a precaution for my safety. . . . You are also going to turn over my entire file of alleged 'Complaints.' . . . I never did anything wrong. Period. You are going to suffer now as much as I have....go to sleep bitch[.]" The subject line read: "Dale – See you today." A minute later, Lartigue sent a separate email to Farias with the subject line: "Ill be by your pig pen ..... around....whatever time works best for my busy schedule." Approximately two hours later, Farias sent an email—the recipients of which are unclear from the record—stating that Lartigue "has sent three emails this morning saying that she's coming to my office i have alerted police." Lartigue responded to

4

Farias's email minutes later: "Correction : 1 email. You aren't getting away with fabricating stories for much longer[.]"

Four days later, on April 12, 2024, Farias filed the instant suit against Lartigue for stalking and sought temporary and permanent injunctive relief. In her petition, Farias alleged that, after the start of the UPLC Litigation, Lartigue "engaged in inappropriate, harassing and profane contact with [Farias], members of the Farias Law Firm, members of the law firm staff, and the after-hours answering service hired by [Farias] and her law firm." She further alleged that Lartigue made "credible threats" and went to her law firm offices, preventing Farias from conducting "her regular activities of daily business and meet[ing] safely with her clients." Farias attached an affidavit to her petition, in which she stated that:

> Lartigue sent repeated emails and placed multiple calls to my office's after-hours answering service. . . . She has repeatedly [and] falsely accused me of being a criminal and aiding and abetting criminal conduct, and publicly made comments that I deserve to be disbarred. Lartigue has made clear that she is coming to my office . . . . I have reason to believe that Lartigue is aware of my home address. I am in fear for my life and my immediate safety.

Farias attached her and Lartigue's email correspondence to her affidavit.

On June 12, 2024, in the UPLC Litigation, the trial court entered an "Agreed Final Judgment and Permanent Injunction," bringing the UPLC Litigation to an end.

On July 31, 2024, in the instant suit, Lartigue filed a motion to dismiss under the TCPA. In the motion, Lartigue argued that the TCPA applied to Farias's stalking

claim because "Plaintiff's claim of illegal stalking . . . is based on or in response to": (1) "Defendant's exercise of her right of free speech," (2) "Defendants' exercise of her right to *petition*," and (3) "acts of the Defendant described by" section 27.010(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a) (setting forth grounds for motion to dismiss under TCPA). In support of her motion, Lartigue submitted an affidavit in which she stated that all her and Farias's emails "related to" the UPLC Litigation and that in those communications Lartigue "was demanding . . . to see [Farias's] file containing all of the complaints, their content, and who Dale Keating was." Lartigue further stated in her affidavit that she "never went to" Farias's offices "to obtain this information."

In Farias's response to Lartigue's motion, she argued that the TCPA does not protect Lartigue's "threatening, assaultive, and destructive conduct" and that her stalking claim was in response to Lartigue's threats, not Lartigue's communications regarding the UPLC Litigation. Farias also argued that Lartigue's statements amounted to true threats not protected by the First Amendment. In support of her motion, Farias submitted another affidavit and attached pleadings from the UPLC Litigation as well as copies of email correspondence that Farias had previously attached to her petition when she filed suit.

In reply, Lartigue continued to argue that the emails she sent to Farias were the basis for Farias's suit, and she filed a supplemental affidavit, in which she stated that the UPLC Litigation was the "but for" cause of her emails to Farias.

On September 16, 2024, the trial court held an oral hearing on Lartigue's motion to dismiss. Lartigue's counsel filed written objections to the affidavit and exhibits attached to Farias's response and raised these objections during the hearing. The trial court stated that it would rule on Lartigue's objections when rendering a ruling on the motion to dismiss.

Two days later, the trial court issued an order denying Lartigue's motion to dismiss. The trial court did not rule on Lartigue's objections to the affidavit or exhibits attached to Farias's response to the motion to dismiss. Following the trial court's order, Lartigue filed a motion for reconsideration, objecting to the trial court's failure to rule on her objections.[4] The trial court did not rule on Lartigue's motion for reconsideration. This interlocutory appeal followed.

---

[4] We need not address Lartigue's objections to portions of an affidavit and exhibits attached to Farias's response to Lartigue's motion to dismiss because our resolution of this appeal does not depend on the statements or exhibits to which Lartigue objected. *See Pecan St. Owners Ass'n v. Mala Vida, LLC*, No. 03-25-00216-CV, 2025 WL 2981633, at *8 n.7 (Tex. App.—Austin Oct. 23, 2025, no pet.) (mem. op.) (not addressing evidentiary objections to affidavits because "evidence contained in the affidavits is not relevant to the issues dispositive to this appeal"); *Rouzier v. Biote Med., LLC*, No. 05-19-00277-CV, 2019 WL 6242305, at *3 n.2 (Tex. App.—Dallas Nov. 22, 2019, no pet.) (mem. op.) (not addressing evidentiary objections to affidavit because resolution of appeal did "not depend upon any testimony" to which appellant objected).

## Denial of TCPA Motion

The legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see McLane Champions, LLC v. Hou. Baseball Partners LLC*, 671 S.W.3d 907, 913-14 (Tex. 2023) (recognizing purpose of TCPA). To accomplish this purpose, the statute permits a party to file an early motion to dismiss, subject to interlocutory review. *McLane Champions*, 671 S.W.3d at 914. Courts review TCPA motions under a three-step, burden-shifting framework. *Id.* at 914 & n.6. First, a movant must demonstrate that the legal action "is based on or is in response to" a protected right and, therefore, subject to dismissal. TEX. CIV. PRAC. & REM. CODE § 27.005(b). The burden then shifts to the nonmovant to avoid dismissal by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the nonmovant meets her burden, the legal action is nonetheless subject to dismissal if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

We review de novo a trial court's denial of a TCPA motion to dismiss. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) (citing *Better Bus. Bureau of Metro. Hou., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). In considering whether a legal action is subject to or should be dismissed under the TCPA, we consider the pleadings, evidence a court could consider under rule 166a of the Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a). The plaintiff's allegations, not the defendant's admissions or denials, determine the basis of the legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We view the pleadings and evidence in the light most favorable to the nonmovant. *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). We do not "blindly accept" the movant's characterization of the nonmovant's claims. *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd); *see Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.) ("[W]e do not blindly accept attempts by appellants to characterize Ryan's claims as implicating protected expression and conduct." (citing *Sloat*, 513 S.W.3d at 504)); *Jones v. Pierce*, No. 01-23-00187-CV,

9

2023 WL 7778583, at \*3 (Tex. App.—Houston [1st Dist.] Nov. 16, 2023, no pet.) (mem. op.) (quoting *Sloat*, 513 S.W.3d at 504).

In her first three issues, Lartigue contends that the TCPA applies to Farias's stalking claim because that claim is based on or in response to one or more of the following: (1) Lartigue's exercise of her right to petition, (2) Lartigue's exercise of her right of free speech, or (3) the act of a party described by section 27.010(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b) (setting forth bases for dismissal under TCPA). In response, Farias argues that her suit is based on communications that are harassing and threatening, and therefore, the TCPA does not apply under any theory that Lartigue advances.

## A.     Right to Petition

In her first issue, Lartigue contends that Farias's stalking claim "is based on or is in response to" Lartigue's "exercise of . . . the right to petition . . . ." TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1). As relevant here, the "exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding" and "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *Id.* §§ 27.001(4)(A), (E). "We construe the phrase 'pertaining to' according to its ordinary meaning as relating directly to or concerning or having to do with." *Jetall Cos. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at \*3 (Tex.

10

App.—Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op.) (quoting *Pertain*, BLACK'S LAW DICTIONARY (11th ed. 2019)). The TCPA defines "communication" to "include[] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

In urging that Farias's stalking claim "is based on or is in response to" Lartigue's exercise of her right to petition, Lartigue principally relies on the following allegations in Farias's original petition:

> Plaintiff serves as an investigator and Chair of the District 4 Subcommittee of the Unauthorized Practice of Law Committee. . . . The District 4 Subcommittee is charged with investigating and responding to complaints made by members of the general public against individuals who are believed to be practicing law without a license. . . .
>
> After an extensive investigation of public complaints against Defendant Lartigue and The Freelance Paralegal, LLC . . . . for allegations that she engaged in the unauthorized practice of law, the State Committee of the UPLC authorized the filing of a lawsuit to enjoin Lartigue from engaging in acts which constitute the unauthorized practice of law. . . .
>
> Plaintiff would show that during the investigation of UPL complaints allegedly committed by Defendant Lartigue, Defendant engaged in inappropriate, harassing and profane contact with Plaintiff, members of the Farias Law Firm, members of the law firm staff, and the after-hours answering service hired by Plaintiff and her law firm.

Lartigue contends that each of Lartigue's communications on which Farias's stalking claim is based occurred after the UPLC Litigation commenced and pertains to that judicial proceeding. In emails to Farias, Lartigue mentioned "Dale Keating," a complainant in the investigation that underpinned the UPLC Litigation, and, at

11

times, requested that Farias "turn over [the] entire file of alleged 'Complaints.'" Lartigue also points to her supplemental affidavit, in which she stated:

> But for the complaints being investigated by Karleana L. Farias, such as Dale Keating's complaint against me, which are the bases to the UPLC lawsuit, that she refused to provide me, along with her complete file to allow me to defend myself, none of these e-mails that are the basis of the present suit would have been sent to Karleana L. Farias by me.

However, as noted, we do not blindly accept a movant's characterization of the nonmovant's claims. *Sloat*, 513 S.W.3d at 504. That Farias, in her original petition, referenced another judicial proceeding—the UPLC Litigation—does not mean that her stalking claim is based on or in response to any communication pertaining to that proceeding. *See, e.g.*, *Abundant Life Therapeutic Servs. Tex., LLC v. Headen*, No. 05-20-00145-CV, 2020 WL 7296801, at *3 (Tex. App.—Dallas Dec. 11, 2020, pet. denied) (mem. op.) (holding that claim was not "based on or in response to" movant's exercise of right to petition even though petition referenced another ongoing lawsuit); *Ruff v. Ruff*, No. 05-24-00095-CV, 2025 WL 757148, at *4 (Tex. App.—Dallas Mar. 10, 2025, pet. denied) (mem. op.) (noting that incidental reference to judicial proceeding in petition did not make suit "based on or in response to" communications pertaining to judicial proceeding); *Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204, at *3 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, pet. denied) (mem. op.) (noting that a legal action does not implicate communications in or pertaining to judicial proceeding when a party's pleading

merely "reference[s] the filing of various legal actions by both parties as factual background"). As for Lartigue's statements in her supplemental affidavit, they establish only that Lartigue's communications were motivated by the UPLC Litigation. That fact alone does not mean that each of those communications pertains to the UPLC Litigation.

Even so, it is not enough that Lartigue points to communications made by her that pertain to a judicial proceeding. To satisfy her initial burden under the TCPA, Lartigue must demonstrate that Farias's suit is "based on" or "in response to" those communications. This Court has held that the "based on" component of a movant's step-one burden requires that the activity protected by the TCPA be the "main ingredient" or "fundamental part" of the legal action that the movant challenges. *HouReal Corp. v. Rescue Concepts Inc.*, 722 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2025, no pet.) (citing *Ernst & Young*, 2023 WL 4239350, at *8). The "in response to" component "denotes some sort of answer or other act in return or 'in reaction to' the alleged communications." *Id.* In *HouReal*, the defendant sought to dismiss the plaintiff's breach-of-contract action under the TCPA because the plaintiff alleged in its petition that the defendant made incorrect statements in a hearing in a prior suit. *Id.* at 153. Nonetheless, we held that the plaintiff's suit was not based on or in response to those statements. *Id.* at 154. Rather, the "gravamen" of the plaintiff's legal action was that the defendant breached an agreement to sell

real property to the plaintiff by instead selling that property to a third party. *Id.* at 148, 154. Thus, the plaintiff's legal action did not "consist[] of" statements made by the defendant in a judicial proceeding. *Id.* at 154 (citing *Walgreens v. McKenzie*, 713 S.W.3d 394, 400-02 (Tex. 2025)).[5]

Similarly, here, Farias does not complain about, for example, Lartigue's request for copies of the complaints that served as the basis for the UPLC Litigation. Rather, in her petition bringing a stalking claim against Lartigue, Farias complains of "inappropriate, harassing and profane contact with Plaintiff, members of the Farias Law Firm, members of the law firm staff, and the after-hours answering service hired by Plaintiff and her law firm." In the affidavit attached to her petition, Farias complains that Lartigue "has made clear that she is coming to my office and has concluded emails with threats such as, 'You are going to suffer now as much as I have...go to sleep bitch.'" Farias attached to her petition an email by Lartigue that read: "Ill be by your pig pen ..... around....whatever time works best for my busy schedule." When Farias notified Lartigue's attorney that Lartigue "has sent three emails this morning saying that she's coming to my office i have alerted police," Lartigue replied to Farias by email: "Correction : 1 email. You aren't getting away

---

[5]     On April 21, 2026, Lartigue, through her counsel, filed a letter, in which she urged that we consider an opinion that the Texas Supreme Court issued after the close of briefing in this appeal: *Walgreens v. McKenzie*, 713 S.W.3d 394 (Tex. 2025). Our opinion is consistent with the reasoning and holding of *Walgreens*.

with fabricating stories for much longer[.]" Even if the UPLC Litigation motivated Lartigue's communications, as Lartigue contends in her supplemental affidavit, that does not mean all her statements "pertain to" that judicial proceeding. "[A]lleged threats made outside the context of [a] lawsuit" are not communications "in or pertaining to . . . a judicial proceeding." *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.). Those alleged threats are the "gravamen" of Farias's stalking claim, not any communications Lartigue made in or pertaining to the UPLC Litigation. *See HouReal*, 722 S.W.3d at 154.

The authorities on which Lartigue relies do not compel a contrary conclusion. In arguing that Farias's claim is based on or in response to Lartigue's exercise of her right to petition, Lartigue relies on *Garcia v. Semler*, 663 S.W.3d 270 (Tex. App.—Dallas 2022, no pet.); *Holcomb v. Waller Cnty.*, 546 S.W.3d 833 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); and *Bibby v. Bibby*, 634 S.W.3d 401 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Each of those cases is distinguishable. In *Garcia*, the nonmovant essentially failed to contest application of the TCPA and argued only that her claim was meritorious, an argument that goes to step two of the TCPA analysis—i.e., whether the nonmovant can establish a prima facie case. 663 S.W.3d at 280. Similarly, in *Bibby*, the nonmovant conceded that the legal action was based on protected activity. 634 S.W.3d at 409. Unlike the nonmovants in *Garcia* and *Bibby*, Farias does not concede or waive argument on step one of the

15

TCPA analysis. Lastly, in *Holcomb*, Waller County sought a declaratory judgment that signs posted in county buildings prohibiting firearms did not violate state law in response to a citizen's sending a letter to the county complaining of the signs for that reason. 546 S.W.3d at 839. In sending the letter, the citizen exercised his right to petition, and the county sued him in response to his exercise of that right. *Id.* at 840. As discussed above and unlike the county in *Holcomb*, Farias's stalking claim is not in response to any attempt by Lartigue to "seek 'redress of grievances.'" *Id.* at 840 (quoting TEX. CONST. art. 1, § 27). Her claim is in response to Lartigue's statements that Lartigue intends to come to Farias's offices, that Farias is "going to suffer," that Farias will no longer "get[] away with fabricating stories," and other similar statements that Farias interpreted as threats to the safety of herself, her family, and her office staff.

Lastly, Lartigue notes that she filed police reports against Keating, which is an exercise of the right to petition under the TCPA. *See Bibby*, 634 S.W.3d at 408-09 (noting that party exercises her right to petition under TCPA by filing police report, whether true or false). However, as with other communications made by Lartigue, Lartigue does not demonstrate that Farias's suit is based on or in response to any police report Lartigue filed against Keating. Lartigue's only evidence is that she sent an email informing Farias of the police reports against Keating. That evidence is insufficient to carry Lartigue's burden.

16

Lartigue has not met her initial burden of demonstrating that Farias's stalking claim is based on or in response to Lartigue's exercise of her right to petition, and we overrule her first issue.

## B. Right of Free Speech

In her third issue, Lartigue contends that Farias's stalking claim "is based on or is in response to" Lartigue's "exercise of . . . the right of free speech . . . ." TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1).[6] The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern," which is defined as "a statement or activity regarding . . . a public official[;] . . . a matter of political, social, or other interest to the community; or . . . a subject of concern to the public." *Id.* §§ 27.001(3), (7). As previously mentioned, the TCPA defines "communication" to "include[] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

Lartigue contends that her emails and calls to Farias related to the unauthorized practice of law, which is a matter of public concern. In support of her argument, Lartigue relies on *Kostura v. Judge*, 627 S.W.3d 380 (Tex. App.—

---

[6] Because Lartigue's arguments concerning the exercise of her rights to petition and of free speech are interrelated, we next address her contention that Farias's stalking claim is based on or in response to Lartigue's exercise of her right of free speech. We address Lartigue's second issue last.

17

Amarillo 2021, pet. denied). In *Kostura*, the court of appeals held that a law firm's letters to clients regarding one of its partner's diminished capacity to practice law "were communications made in connection with a matter of public concern" under the TCPA. 627 S.W.3d at 386. That letter served as the basis for the partner's claims of defamation, invasion of privacy, and intentional infliction of emotional distress against the law firm. *Id.* at 384. Lartigue's conduct is not analogous to the law firm's in *Kostura*. Lartigue did not make statements concerning the unauthorized practice of law. Rather, the UPLC accused Lartigue of the unauthorized practice of law following an investigation by Farias.

Additionally, Lartigue contends, and relies on her supplemental affidavit for support, that the UPLC Litigation and preceding investigation are the "but for" cause of her emails to Farias. Accepting that contention as true, that fact does not transform each of Lartigue's emails and calls to Farias into "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). Even if portions of Lartigue's communications were in connection with a matter of public concern—such as, arguably, comments on Farias's abilities as a licensed attorney or alleged criminal and civil violations—the question is whether Farias's stalking claim "is based on or is in response to" Lartigue's exercise of her right of free speech rather than in response to Lartigue's harassing conduct. *Ernst & Young*, 2023 WL 4239350, at *6 ("The mere inclusion of allegations in the petition,

18

some of which include expression or conduct protected by the TCPA and some of which do not, does not transform the tortious interference claim into one based on or responding to any protected activity."). In *Ernst & Young*, we recognized that public auditors perform an important public function and that "audit-related communications and conduct are connected with or relate to a matter of public concern." *Id.* at *5. At the same time, we concluded that the plaintiff's legal action was not based on or in response to any audit-related communications. *Id.* at *7-8. Rather, the legal action was based on allegations that the accounting firm inappropriately received the plaintiff's audit communications and then used those communications to solicit business. *Id.* at *8.

Likewise, here, even if there is some connection between the unauthorized practice of law and Lartigue's emails and calls, Farias's stalking claim rests on Lartigue's allegedly harassing conduct, not any matter of public concern. As detailed above, Lartigue made repeated and unwanted calls and emails to Farias that included threats to show up at Farias's offices and to make Farias "suffer." Threats are not "protected communication[s] about a matter of public concern within the meaning of the TCPA." *Whitelock v. Stewart*, 661 S.W.3d 583, 596–97, 605–06 (Tex. App.—El Paso 2023, pet. denied) (holding that TCPA did not apply to intentional-inflection-of-emotional-distress claim predicated on "death threats, threats of arson, theft, and trespass" but did apply to defamation claim based on communications

accusing party of criminal acts); *see Sloat v. Rathbun*, 513 S.W.3d 500, 508 (Tex. App.—Austin 2015, pet. dism'd) (noting that "it strains credulity to consider . . . harassing conduct . . . as having any direct relationship" with a matter of public concern); *Grant v. Finecy*, No. 02-23-00310-CV, 2023 WL 8940395, at *7 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.) (mem. op.) (holding that TCPA did not apply to stalking claim "predicated upon allegations of both harassing and threatening conduct"); *cf. Serafine*, 466 S.W.3d at 360 (holding that "alleged threats made outside the context of the lawsuit" were not communications in or pertaining to a judicial proceeding under TCPA). It is those threats on which Farias's stalking claim is based, not any incidental comments by Lartigue regarding the UPLC Litigation.

Lartigue has not met her initial burden of demonstrating that Farias's stalking claim is based on or in response to Lartigue's exercise of her right of free speech, and we overrule her third issue.

## C.    Section 27.010(b)

In her second issue, Lartigue contends Farias's stalking claim "is based on or is in response to . . . the act of a party described by" section 27.010(b) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 27.005(b)(2). Section 27.010(b) specifies certain types of legal actions to which the TCPA applies, notwithstanding the exemptions set forth in section 27.010(a). Relevant to this

20

appeal, section 27.010(b)(2) describes "a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." *Id.* § 27.010(b)(2). The acts "described by" section 27.010(b)(2) are "the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." *Id.* Taking these provisions together, a legal action is subject to dismissal under the TCPA if it is based on or in response to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses. *Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.); *see Wheeler v. J. M. Martin Custom Homes, Inc.*, 728 S.W.3d 326, 330 (Tex. App.—Amarillo 2025, no pet.) (concluding that TCPA applies to legal actions based on "the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses"); *Gulf Coast Pros, LLC v. Sweeney*, No. 09-23-00320-CV, 2024 WL 3057494, at *9 (Tex. App.—Beaumont June 20, 2024, no pet.) (mem. op.) (same); *Pate v. Haven at Thorpe Lane, LLC*, 681 S.W.3d 476, 488-89 (Tex. App.—Austin 2023) (same),

21

*rev'd on other grounds sub nom. Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330 (Tex. 2025).[7]

In her brief, Lartigue contends that Farias's stalking claim "arose from" Farias's communication or conduct in "receiving and processing" consumer complaints, which resulted in the UPLC Litigation. Even if we accept the contention that Farias was engaged in "the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses," Farias's stalking claim is not based

---

[7] Our sister courts of appeals have recognized, as we do here, that the acts described by section 27.010(b)(2) are "the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." TEX. CIV. PRAC. & REM. CODE § 27.010(b)(2). However, to the extent our sister courts of appeals have suggested that a movant discharges her initial burden under the TCPA by demonstrating that a legal action is "related to" or "arises from" one of those acts, we disagree. *See Wheeler v. J. M. Martin Custom Homes, Inc.*, 728 S.W.3d 326, 330 (Tex. App.—Amarillo 2025, no pet.) ("Section 27.010(b)(2) makes the TCPA applicable to Martin's counterclaim if it is *related to* the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." (emphasis added) (citation modified)); *Pate v. Haven at Thorpe Lane, LLC*, 681 S.W.3d 476, 488-89 (Tex. App.—Austin 2023) ("[W]e hold that Haven's motion for sanctions 'arises from' the mothers' actions in furtherance of their communication or conduct described by Section 27.010(b)." (citation modified)), *rev'd on other grounds sub nom. Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330 (Tex. 2025). For the TCPA to apply under this basis, a movant must demonstrate that a legal action "is based on or is in response to . . . the act of a party described by" section 27.010(b) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 27.005(b)(2); *see Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.) ("The Maggrets will have established their initial burden if they show that Ramsey's suit is *based on* an act described in Section 27.010(b). . . ." (emphasis added)).

on or in response to any of those acts as the TCPA requires. That a legal action "arises from" one of those acts may permit a party to file a motion to dismiss under the TCPA, but it does not authorize dismissal on that basis. *Compare* TEX. CIV. PRAC. & REM. CODE § 27.005(b) (requiring, as a prerequisite of dismissal, that a party demonstrate that the "legal action is based on or is in response to" a protected right or specified act) *with id.* § 27.003(a) (authorizing a party to file a motion to dismiss if a "legal action . . . arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)").

Lartigue has not met her initial burden of demonstrating that Farias's stalking claim is based on or in response to "the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses," and we overrule her second issue.

Because we have concluded that the TCPA does not apply to Farias's stalking claim under any basis advanced by Lartigue, we need not address Lartigue's remaining arguments regarding whether Farias established a prima facie case or whether Lartigue established an affirmative defense as a matter of law. *See McLane Champions, LLC v. Hou. Baseball Partners LLC*, 671 S.W.3d 907, 914, 920 (Tex. 2023) (concluding that TCPA does not apply under first step and ending analysis);

*Wayne Dolcefino & Dolcefino Commc'ns, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 202 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same).

## Conclusion

Because we conclude that Lartigue has not demonstrated that Farias's stalking claim is based on or in response to Lartigue's exercise of a right or act protected by the TCPA, we affirm the trial court's order denying Lartigue's motion to dismiss under the TCPA.

Amparo "Amy" Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.